# Berkey v. Berwind-White Coal Mining Company, Appellant.

*Mines and mining—Coal mining—Surface support—Lateral support—Measure of damages.*

1. Where there is no waiver of surface support, the owner of the surface is entitled to absolute support of his land, not as an easement or right depending on a supposed grant, but as a proprietary right at common law, and this right which the servient estate owes to the dominant estate does not depend on whether the mining operations are conducted skillfully or negligently and carelessly.

2. If an injury caused by failure to support the surface is reparable or curable with reasonable effort and expense less than the value of the property, the measure of damages is what it will cost to make the repairs. If the injury is permanent the measure of damages is the difference in market value of the land before and after the injury inflicted by the mining operations.

3. The principle that the owner of land has the right to mine and remove his coal without liability for injuries done subterranean streams of water flowing to neighboring land has no application to the right of the owner of the surface against the owner of the coal thereunder to recover damages for injuries to the surface by mine operations.

*Evidence—Cross-examination—Examination in chief.*

4. A party will not be permitted in cross-examination to introduce matters which should have been introduced in the examination in chief, if competent at all.

5. In an action to recover damages for injuries to surface of land where a witness testifies that he had seen depressions in the surface caused by the removal of coal below, he cannot on cross-examination be asked whether he had not in another case, concerning different land, testified that he had seen depressions due to the removal of coal, and that subsequently it had been ascertained that no coal had been removed from the land in question.

Argued Oct. 6, 1910. Appeal, No. 195, Oct. T., 1910, by defendant, from judgment of C. P. Somerset Co., May T., 1908, No. 77, on verdict for plaintiff in case of Henry A. Berkey v. Berwind-White Coal Mining Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for injuries to surface caused by coal mining operations. Before KOOSER, P. J.

At the trial when Daniel Ott was on the stand on cross-examination, the following offer was made:

Mr. Ruppel: We propose to ask the witness whether he did not testify in the case of Jacob L. Manges v. The Berwind-White Coal Mining Company for damages to the surface of a tract of land in the same vicinity as the land of the plaintiff in this case; and to ask the witness whether he did not testify in that case that there were depressions on the surface plainly visible which had been made by the surface sinking down after the removal of the coal; to be followed by proof that the witness did so testify, unless he admits the same in his answer, and by further proof that subsequent to that time the coal under the said Manges tract was removed and at the time the witness testified in said trial there had been no coal removed from said farm, and consequently there could have been no depression. This for the purpose of contradicting the witness's testimony and showing that he may be mistaken in his belief as to the depressions and the surface in this case. We also propose to ask the same question to such other witnesses as may be called by the plaintiff who did testify in the Jacob L. Manges case.

Mr. Val. Hay: This is objected to as inadmissible and irrelevant and immaterial; it relates to depressions on another farm and another tract of land and is improper cross-examination.

The Court: We think this improper cross-examination and refuse to permit the question to be propounded to the witnesses, and note an exception to the defendant. [1]

C. P. Collins on cross-examination was asked this question:

Mr. Ruppel: Now, Mr. Collins, isn't it a fact, that with such cover as there was over this coal, in the ordinary mining of coal by driving in headings and running off rooms and leaving pillars of coal standing sufficient for ordinary support of the surface, isn't it a fact that the roof of the mine will occasionally break in?

Mr. Greer: We object to that as not being proper cross-examination.

The Court: I don't think it is proper and sustain the objection and note an exception to the defendant. [2]

Mr. Ruppel: Now, Mr. Collins, if the coal remained intact on the Henry A. Berkey farm, and all the coal were mined out on the adjoining tracts, north, south, east and west, what would be the effect on the springs on the Henry A. Berkey farm?

Mr. A. L. G. Hay: This is objected to as being improper cross-examination.

The Court: We think if admissible at all, this is part of your case, and sustain the objection and note an exception to the defendant. [3]

E. A. Delaney took the stand for defendant:

Mr. Ruppel: We now propose to prove by the witness on the stand and others that mining operations were carried on under this farm by the latest and most approved methods of mining, and under the supervision of competent mine bosses, and with frequent inspection of the mines by the mine inspector and other state officers, and that the mining was done in a prudent, careful, skillful and workmanlike manner, and that the springs of

water would have been affected on this farm practically to the same extent if no pillars or ribs had been removed under the farm, and that the loss of water on the farm was not due to any careless, negligent or unskillful mining and removing of the coal.

Mr. Greer: This is objected to as being incompetent, irrelevant and immaterial testimony; it is an absolute duty of the party mining to afford absolute support to the overlying strata, which duty is a continuing one and existing even though to perform it every pound of coal should have to remain in the land. Good or bad mining in no way affects this legal duty, and therefore is not a defense in this action. It is further objected to that the second part of the said offer is impossible to prove and would be purely speculative, and it would be a mere guess without anything supporting it, and in addition to the foregoing objection, we add this as to the latter part of the offer, unless it is to be followed by evidence to support the mere opinion that would make it something other than a guess.

The Court: We admit the evidence under so much of the offer as undertakes to prove the method and character of mining operations on the farm, and that the springs would have been affected to practically the same extent if even the pillars had not been drawn, but we exclude the latter part of the offer which seeks to show that the loss of the water was not due to unskillful mining alone under the Henry A. Berkey farm, and note an exception to the plaintiff and defendant and seal a bill. [4]

M. D. Reel, witness on the stand for defendant:

Mr. Ruppel: We propose to prove by the witness on the stand and others that for several years last past beginning about 1904, and continuing down to this time throughout different sections of Somerset county, the springs have not furnished a continuous flow of water to the same extent that they formerly did; that many springs during this period have gone dry during certain seasons of the year that were never known to be dry before; that

particularly within the last couple of years there has been a marked decrease in the flow of springs during certain portions of each year and this in regions that were unaffected entirely by the mining and removal of coal.

Mr. Greer: We object to this as incompetent, irrelevant and immaterial.

The Court: We cannot go into an inquiry as to the general condition of springs in the county, the offer is to prove that some of them have a diminished quantity of water in the last few years, and particularly in the last two years, but will permit proof to the effect of the flow of springs within a reasonable radius of the Henry A. Berkey farm, within that same basin, but not at the distance offered by this witness as twelve or fourteen miles away, and note an exception to the defendant and plaintiff. [5]


The court charged in part as follows:

[But if in mining the coal the defendant has dropped the surface, and the dropping of the surface has occasioned cracks and destruction of the overlying strata, or such condition of things as that the water was lost by that reason, by reason of the failure of the defendant company to do what it was bound to do, to wit, to support the surface, then the plaintiff is entitled to recover by reason of the injury sustained, and to such loss as he has sustained and to such extent as he may have satisfied you he has suffered. That is to say, if it had appeared there had been no subsidence or sinking of these overlying strata by reason of the mining and removal of the coal, or if the springs were not destroyed by reason of failure to provide surface support, then there could be no recovery for the loss of the springs. But if the failure to furnish the surface support to which the plaintiff was legally entitled caused subsidences, and the subsidences caused fissures, cracks, and general disturbances of the strata; if the springs were lost in that way by the operations upon this farm, the plaintiff has a right to recover for them.] [6]

[But if the mining operations on either of these parts I have designated to you caused subsidences of the soil, and depressions, the defendant is liable for the depressions; and if by the depressions thus caused, cracks were made through what is called sometimes the superincumbent mass, that is from the mine to the surface, and if by the breaking up either by cracks or by the crushing of these various strata which lie one upon another, the water was conducted away from the springs, the plaintiff is entitled to recover for the injuries to the springs.] [7]

Plaintiff presented this point:

2. [That if the jury shall find from the evidence that plaintiff's springs were injured, and depressions and cracks made in the surface of his farm, as a result of the mining and removal of the coal by the defendant company, and its failure to support the surface of his land in its natural state, plaintiff is entitled to recover damages.] [8]  *Answer:* That may be affirmed; that is practically what is said above. [8]

Defendant presented these points:

1. Under the pleadings and all the evidence in the case the verdict must be for the defendant. *Answer:* The first point without reading it to the jury we decline. [9]

2. The burden is on the plaintiff to establish every element of his case by a preponderance of the evidence and as the uncontradicted evidence shows that there was no mining done under that part of the farm which contains the subterranean stream or stratum supplying water to the spring at the house and the spring at the fish dam and the other spring near it, prior to September 16, 1904, and as the plaintiff has also established by his own testimony and by the evidence of other witnesses that whatever loss of water there was to these springs occurred as early as September 16, 1904, therefore under the pleadings and all the evidence there can be no recovery for alleged damages to the spring at the house or the two springs near the fish dam as the plaintiff has clearly established that whatever loss of water there might have

been to these springs was occasioned by some other cause than the removal of the coal on plaintiff's farm. *Answer:* The first part of that point which reads as follows: "The burden is on the plaintiff to establish every element of his case by a preponderance of the evidence" is affirmed and the balance declined. [10]

3. The only evidence in the case upon which the jury could rely to find that there was a depression in the surface or the breaking of the strata above the mine on any part of the plaintiff's farm which would affect the springs at the house and fish dam is the evidence on the part of the plaintiff which relates to the depression in plaintiff's farm south of the buildings and east of the public road, and if the jury find from the evidence that there was no subsidence of the surface at that point then they are instructed that they cannot in this action allow for damages for loss of water at the springs at the house and fish dam. *Answer:* The third point is declined. [11]

4. Even if the jury believe that there were at different places on plaintiff's farm depressions caused by the subsidence of the surface by reason of the removal of the coal underneath, yet if these injuries to the surface could be repaired with reasonable effort and expense the measure of damages would be what would be required to be expended for such remedy and as the plaintiff has not proved what such damages would be or what such necessary expense would amount to, the jury cannot in this case allow for any such claim for damages. *Answer:* You will observe, gentlemen, that the plaintiff's last point was: That "when the injury is permanent, the measure of damages is the difference in the market value before and after the injury," and we have affirmed that. Now this raises another question. That is to say, what would be the measure of damages if the injury was reparable or curable? The rule to measure damages differs in injuries to real estate. Where a thing is irreparable and permanent, can't be repaired, the rule is as I stated to you, the difference between the value of the property before and

after the injury, but if the injury can be repaired with a reasonable effort and expense less than the value of the property (you couldn't carry the expense for repairs beyond the value of the whole), then the measure is not the difference in value of the farm, but it is what it would cost to make the repairs. And it is true, there has been no proof here of what it would cost to repair it, and if it is reparable there being no proof of the cost of repair, you cannot allow for it. But the counsel for the plaintiff rely entirely on the theory that it is a permanent and irreparable injury. That is to say that the depressions are not only visible on the mere open surface, but they have continued through to the mine, affecting more or less all the stratification from the depression to the mine. If it can be repaired to as good condition as it was before, of course the plaintiff could only recover proven cost of repairs, and no such testimony was offered; but if it is a permanent injury that cannot be restored to as good condition as before, the cost of repairs would have nothing to do with the measure of damages at all. The measure would still remain as I have given you in the last point of the plaintiff—the before and after values. Of course, if the jury find the injury reparable, then this fourth point of the defendant would operate to the relief of the defendant in the case. If you find the injury is permanent and not reparable, then the fourth point of the plaintiff states the true measure of damages. [12]

5. Under the pleadings and all the evidence in the case there can be no recovery for alleged damages to the dwelling house or the spring at the dwelling house. *Answer:* I refuse that point. [13]

Verdict and judgment for plaintiff for $5,000. Defendant appealed.

*Errors assigned* were (1–5) rulings on evidence, quoting the bill of exceptions; (6–13) above instructions, quoting them, and (14) refusal of defendant's motion for judgment n. o. v.

*W. H. Ruppel*, with him *C. F. Uhl, Jr.*, for appellant.—
The question to Ott should have been allowed: Ott v.
Houghton, 30 Pa. 451; Hopkinson v. Leeds, 78 Pa. 396;
Fulton v. Central Bank, 92 Pa. 112; Reading & P. R. R.
Co. v. Balthaser, 126 Pa. 1; Long v. Ins. Co., 137 Pa. 335;
Lentz v. Carnegie, 145 Pa. 612; Derk v. Ry. Co., 164
Pa. 243; Beck v. Hood, 185 Pa. 32; Com. v. Farrell, 187
Pa. 408; Com. v. Bell, 4 Pa. Superior Ct. 187.

In conducting extensive mining operations, it is in
general impossible to preserve the flow of the subterra-
nean waters through the interstices in which they have
usually passed, and many springs must be necessarily
destroyed in order that the proprietors of valuable min-
erals may enjoy their own. The public interest is greatly
promoted by protecting this right, and it is that the im-
perfect rights and lesser advantage should give place to
that which is perfect, and infinitely the most beneficial
to individuals and to the community in general: Wheat-
ley v. Baugh, 25 Pa. 528; Winnett v. Coal & Coke Co.,
37 Pa. C. C. Rep. 489; Haldeman v. Bruckhart, 45 Pa.
514; Coleman v. Chadwick, 80 Pa. 81; Trout v. Mc-
Donald, 83 Pa. 144.

*Valentine Hay* and *C. C. Greer*, with them *A. L. G. Hay*,
for appellee.—The court ruled properly on the questions
asked on cross-examination: Glenn v. Traction Co., 206
Pa. 135; Hughes v. Westmoreland Coal Co., 104 Pa. 207;
Hildeburn v. Curran, 65 Pa. 59; Buck v. McKeesport,
227 Pa. 10; Griffith v. Eshelman, 4 Watts, 51; Com. v.
Craig, 19 Pa. Superior Ct. 81; Bohan v. Avoca Borough,
154 Pa. 404; Jackson v. Litch, 62 Pa. 451; Bank v. Roess-
ler, 186 Pa. 431; Elliott v. Boyles, 31 Pa. 65; Beck v.
Hood, 185 Pa. 32; Lenahan v. Coal Mining Co., 221 Pa.
626; Hopkinson v. Leeds, 78 Pa. 396; Turner v. Reynolds,
23 Pa. 199; Breinig v. Meitzler, 23 Pa. 156; Helser v.
McGrath, 52 Pa. 531; Thomas v. Loose, 114 Pa. 35; Ful-
ton v. Bank, 92 Pa. 112.

Plaintiff was entitled not to ordinary support, but to

"absolute support:" Coleman v. Chadwick, 80 Pa. 81; Youghiogheny River Coal Co. v. Bank, 211 Pa. 319; Carlin v. Chappel, 101 Pa. 348; Noonan v. Pardee, 200 Pa. 474; Kellert v. Coal & Iron Co., 226 Pa. 27; Robertson v. Coal Co., 172 Pa. 566; Miles v. Coal Co., 214 Pa. 544; Weaver v. Berwind-White Coal Mining Co., 216 Pa. 195; Dignan v. Coal & Coke Co., 222 Pa. 390; Jones v. Wagner, 66 Pa. 429; Wheatley v. Baugh, 25 Pa. 528; Haldeman v. Bruckhart, 45 Pa. 514; Trout v. McDonald, 83 Pa. 144.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1911:

In 1892 the plaintiff and his wife conveyed to Robert H. Sayre all the coal and minerals underlying a tract of land in Paint township, Somerset county, containing about 120 acres, together with certain surface and mining rights and privileges for the removal of the coal. There was nothing in the conveyance, however, to authorize the grantee to injure or disturb the surface, or any waiver by the grantors of damages arising from injury to the surface by reason of the mining and removal of the coal. The defendant company is, and has been for some time, mining the coal under a lease from Sayre's grantee. The appellant, the defendant company, has failed to print the statement but we learn from the charge of the court and the history of the case that this action was brought to recover damages for injuries resulting to the surface in mining the coal. The plaintiff alleges that the defendant has removed the coal without properly supporting the surface, which has resulted in depressions and subsidences in the surface, and the loss of certain trees and springs of water on the land. The learned trial judge submitted the case to the jury, and a verdict having been rendered for the plaintiff, judgment was entered thereon.

After a careful review of the record, we fail to find any merit in any one of the numerous assignments of error. The first, second and third assignments allege error in sustaining objections to certain questions by the defend-

ant propounded to the plaintiff's witnesses on cross-examination. The question covered by the first assignment had no tendency to disclose the bias or interest of the witness, as contended by defendant, and the answer would have simply introduced a matter wholly collateral to the issue being tried by the jury. The testimony sought to be elicited by the questions covered by the second and third assignments should have been introduced in chief by the defendant if competent at all at any stage of the proceeding. These assignments need no further discussion. They are not sustained.

The fourth, sixth, seventh and eighth assignments raise the question of the right of the defendant under its lessor's purchase to remove the coal regardless of injuries thereby done the surface. It is contended by the defendant company, as we understand, that it is liable for injuries done the surface by the removal of the coal only in the event that the mining operations are conducted carelessly and negligently, and that no responsibility for injury done the surface by reason of the failure to support it arises if the mining is done in a prudent, careful, skillful and workmanlike manner. This position is wholly untenable and directly in the teeth of all our cases on the subject. We have repeatedly held that where there is no waiver of surface support, as here, the owner of the surface is entitled to absolute support of his land, not as an easement or right depending on a supposed grant, but as a proprietary right at common law, and that this right which the servient estate owes to the dominant estate does not depend on whether the mining operations are conducted skillfully or negligently and carelessly. The learned judge was therefore entirely right in holding that it was the duty of the defendant company to furnish absolute support to the plaintiff's surface, and if by reason of failing to do so injury resulted to the surface, the company was responsible. The plaintiff's right to recover did not depend upon whether the mining operations were conducted prudently and skillfully or carelessly and neg-

ligently, but whether by reason of the failure to properly support it, the surface was injured. In view of the numerous decisions of this court sustaining this position, further discussion of the question is unnecessary. These assignments are without merit and are dismissed.

The court went quite far enough in admitting the testimony under the offer set out in the fifth assignment. The part excluded was clearly incompetent and should not have been admitted.

An examination of the evidence convinces us that the tenth and eleventh assignments should not be sustained. The evidence was for the jury and was properly submitted. The twelfth assignment relates to the measure of damages. The learned judge correctly disposed of the matter covered by this assignment. He distinctly told the jury that if the injury was reparable or curable with reasonable effort and expense less than the value of the property, the measure of damages was what it would cost to make the repairs. He further instructed them that there had been no proof offered by the plaintiff of what it would cost to make the repairs and "if it is reparable, there being no proof of the cost of repair, you cannot allow for it." He also told the jury in answer to a point, and very properly so, that if the injury was permanent the measure of damages was the difference in the market value of the farm before and after the injury inflicted by the mining operations. This assignment is dismissed.

The same disposition must be made of the thirteenth and fourteenth assignments, which complain substantially that the court erred in not directing a verdict for the defendant.

From its argument, the defendant company seems to have misapprehended the law applicable to the facts of this case. The simple question for adjudication here was the right of the plaintiff to the absolute support of his surface and the liability of the defendant for damages resulting from failure to furnish such support. As we have said, the law of this state is so well settled that there

should not now be any dispute in regard to it. The rights of the owner of the surface against the owner of the coal thereunder must not be confused with the right of the owner of an adjacent tract of land to mine and remove his coal without liability for injuries done subterranean streams or waters flowing to his neighbor's land. In the latter case the owner of the adjacent land is not liable to his neighbor unless the springs or waters were cut off or diverted by his malice and negligence. The owner of the coal cannot be deprived of it or of the right to mine and remove it by the fact that his neighbor may be deprived of the subterranean waters or streams which will thereby be diverted and prevented from flowing through his land. Mining operations by an owner upon his own land may interfere with and destroy springs upon his neighbor's land by reason of the interference with the filtration or percolation of the water through the owner's land, but such injury is damnum absque injuria, and unless it is occasioned by negligence or by malice the neighbor has no recourse for such injury. This principle, however, is wholly inapplicable to the facts of this case, as we have suggested, and cannot defeat a recovery in this action.

The assignments of error are overruled and the judgment is affirmed.