Pennsylvania Coal & Coke Corporation, Appellant, *v.* Duncan-Spangler Coal Company.

Argued April 19, 1938.

534 

 Be-
fore Keller, P. J., Cunningham, Baldrige, Stadtfeld,
Parker and Rhodes, JJ. 

*R. E. Farr,* with him *P. J. Little,* for appellant.

*F. J. Hartmann,* with him *Edward Knuff,* for appellee.

Opinion by Cunningham, J., September 28, 1938:

The question involved upon this appeal is one of law
—whether the court below erred in holding, under the
several written instruments relied upon by the respec-
tive parties, that the defendant, as the owner of a seam
of coal, was not required, when mining and removing
the same, to support an overlying vein owned by the
plaintiff.

As we understand the record, it is conceded, at least
for the purposes of this case, that in 1907, Blubaker
Coal Company was the owner in fee of two strata or
seams of bituminous coal underlying some eight hun-
dred acres of land in Susquehanna Township, Cambria
County. These seams of coal are separated horizontally
from each other by from forty to fifty feet of rock, the
upper bed of coal being designated as the "E," and the
lower as the "D," seam. Title to the coal in question in
this case was acquired by Blubaker Coal Company under
conveyances from divers grantors, in which conveyances
Blubaker Coal Company was granted certain rights or
easements (hereinafter enumerated) in the surface,

requisite for access to the coal and the carrying on of the business of shipping coal and manufacturing coke, and was released from all liability for any damages suffered by the owners of the surface, through its failure to support the same while mining and removing its coal.

Under date of December 3, 1907, Blubaker Coal Company leased the underlying "D" vein to the Duncan-Spangler Coal Company, defendant below and appellee herein.

The provision of the lease material to the disposition of this appeal reads: "The Lessor hereby grants and conveys to the Lessee so fully as they now own them, the right to *use* and *occupy* all the *surface* of the said lands that may be required for the proper developing, working, mining and shipping of the coal, and the manufacture of coke from said lands hereby leased, such as coal chutes, storing places for coal and coke and refuse from the mines, and for the erecting of weigh scales, coke ovens, sidings, offices, stables, miners' houses and all other buildings necessary for the shipping of coal and the manufacture of coke, and, for all purposes necessary in successfully operating large coal and coke plants, together with the rights of ingress, egress and regress, and free use of timber upon said premises for mining purposes, such as props, ties, as well as stone and water, *being the mining rights, privileges and grants so full and complete as the same are contained in the several Deeds of conveyances from the original owners to the said Lessor.*" (Italics supplied) The above paragraph contains a specific enumeration of the surface rights and easements vested in the lessor and thereby transferred to the appellee.

Under date of June 25, 1913, Blubaker Coal Company also leased four hundred acres of the overlying "E" seam to Watkins Coal Company, which lease passed by assignment, on December 13, 1922, to Pennsylvania Coal and Coke Corporation, plaintiff below and appellant herein.

An important distinction between the terms of the lease of a portion of the "E" seam to appellant's predecessor in title and the lease of the "D" seam to the Duncan-Spangler Company is that in the former the Blubaker Company, the common lessor, not only granted, in general terms, to its lessee of the coal covered thereby *all* its rights to *use* the surface, but also specifically transferred to the lessee its *"release of damages"* for injuries to the surface. This provision of the lease of 1913 to appellant's predecessor reads: "And said Lessor further grants unto the said Lessee, its successors and assigns, *all* and *singular* the mining rights and privileges, and *release* of *damages,* owned by the Lessor in reference to the coal in all of the above described land so fully as the same were acquired by said Lessor by the above recited deeds to it from its various grantors, *the same as though the mining rights and privileges in said deeds contained had been herein recited in full."* (Italics supplied)

The controversy between the respective lessees of these veins of coal arose out of the following circumstances. Sometime during the two years preceding February and March of 1935, appellee, in the course of its mining operations, removed certain supporting pillars of coal in a part of its "D" seam, resulting in a fall of rock and general subsidence in that portion of appellant's "E" seam which had been supported by those pillars.

According to appellant's evidence this rock cave-in, although occurring in a portion of the "E" seam already mined, closed the B-main aircourse of that seam, thereby shutting down this part of appellant's mine and making it impossible to mine and remove through this entry a considerable block of its unmined coal, until the B-main aircourse was cleared or a substitute aircourse opened. Appellant reopened its damaged B-main aircourse by hauling out the fallen rock and installing extensive timbering or shoring at a cost of $656.67.

On April 25, 1935, appellant filed its bill in equity and obtained a preliminary injunction against appellee's further removal of support, which injunction was continued after a preliminary hearing held May 1, 1935. Following the filing of appellee's answer and appellant's reply to the new matter contained therein, a final hearing was held before McKenrick, J., as chancellor.

Paraphrasing appellant's statement of the question involved it may be said that the issue before the court below was whether appellee was entitled to "mine out to exhaustion" its "D" seam of coal "without providing support" for appellant's overlying "E" seam.

There was no dispute between the able and experienced counsel representing the contending parties with relation to the fundamental principles of law defining the rights and obligations of the owners of the separate mineral estates with which we are here concerned.

Counsel for appellee open their printed argument with this frank statement: "[We] raise no question with respect to the settled rule that where the mineral estate has been severed from the surface the mineral estate must support the superincumbent estate as a common law burden from which it cannot be relieved except by a waiver, expressed by apt words or necessary implication."

No question of surface support is involved in this case; the controversy is between the lessee of an upper or overlying mineral estate and the lessee of a lower or subjacent estate of the same kind.

When, as here, such separate estates have been created, it is the law in Pennsylvania that, in the absence of an express release or waiver of support between the respective owners or the insertion of covenants in the conveyances under which they hold title from which one can clearly be implied, the owners of the lower estate owe to the owners of the upper the duty to so conduct their mining operations as to leave intact the overlying

estate: *Jones v. Wagner et al.,* 66 Pa. 429; *Penman v. Jones,* 256 Pa. 416, 100 A. 1043; *Valley Smokeless Coal Co. v. Manufacturers' Water Co.,* 295 Pa. 40, 144 A. 740, and cases there cited; *Com. v. Panhandle Mining Co.,* 315 Pa. 16, 172 A. 106; and *Lenox Coal Co. v. Duncan-Spangler Coal Co.,* 265 Pa. 572, 109 A. 282.

Conceding these general propositions of law and that appellee obtained no *express* waiver of its duty to support appellant's vein of coal or release of damages for failure so to do, counsel for appellee, pointing to the above quoted provision of the lease of 1907 to their client, earnestly contend that by "necessary implication" from its language appellee "was . . . . . . relieved of the duty to support the superincumbent estate."

It may be observed, in passing, that if an intention upon the part of the Blubaker Company to waive support for the overlying "E" seam, which it then owned and continued to own until 1913, clearly appears from the language it used in its 1907 lease to the Duncan-Spangler Company, the present appellant would be as fully bound thereby as the Blubaker Company would have been during the period it retained its ownership of the "E" seam.

This would follow from the fact that the lease of the "E" seam, accepted by the Watkins Company in 1913 from the Blubaker Company and assigned by the Watkins Company to appellant in 1922, contained the following provision: "This Indenture of Lease is executed and delivered subject to any prior rights of the Duncan-Spangler Coal Company under a certain Lease from Blubaker Coal Company to Duncan-Spangler Coal Company, bearing date the 3rd day of December, 1907, . . . . . . which said Lease covers the coal in the "D" seam of coal in certain lands therein particularly described."

This case therefore comes down to the question whether the Blubaker Company, by necessary implication from the language used by it in leasing the "D"

seam to appellee in 1907, waived support for its retained "E" seam.

The contention of counsel for appellee was adopted by the court below; the eighth and controlling "Conclusion of Law" arrived at by the chancellor and adopted by the court below, in banc, reads: "By the terms of lease of December 3, 1907, Blubaker Coal Company, by apt words, to wit: 'being the mining rights, privileges and grants so full and complete as the same are contained in the several deeds of conveyances from the original owners to the said lessor,' and by necessary implication from these words, granted and conveyed to Duncan-Spangler Coal Company the release of damages for failure to support the superincumbent estate."

In a final decree, under date of March 5, 1938, the preliminary injunction was dissolved and the bill of the Pennsylvania Coal and Coke Corporation dismissed; hence this appeal by it from that decree.

A careful consideration of the entire record has convinced a majority of the members of this court that the conclusion reached by the court below is erroneous. We are unable to find in the above quoted provision of the lease of 1907 any language from which it could be implied that the Blubaker Company thereby waived its right to support for its overlying "E" seam or in any way released the Duncan-Spangler Company from liability for any damages to the "E" vein caused by the mining and removal of the "D" seam.

It has been clearly held that the absolute right to support "is not to be taken away by a mere implication from language which does not necessarily import such a result": *Williams v. Hay,* 120 Pa. 485, 496, 14 A. 379. The lease of the coal in the "D" seam with the right to mine and remove it did not relieve the lessee from liability to support the "E" seam, "in absence of express waiver of such right or the use of words from which an intention to waive clearly appears": *Hines v. Union Con-*

*nellsville Coke Company,* 271 Pa. 219, 221, 114 A. 521.

When the lease of 1907 was executed the Blubaker Company was, as above stated, the absolute owner of both veins of coal underlying eight hundred acres of surface, the title to which was in various other persons or companies, but in which it had numerous rights essential to the mining and removal of its seams of coal and to the shipping of coal and the manufacture of coke. In addition to its right to use the surface for ingress, egress and regress, and the erection of coke ovens, coal chutes, scales, buildings, etc., and to take timber, stone and water, therefrom for its business necessities, it had secured from the owners of the surface a waiver of their right of support for the same and had been released by them from liability for any damages occasioned by its failure to support their surface.

When the above quoted provision of the lease is read with these facts in mind and in the light of the principles of law to which we have referred, we think the conclusion inescapable that the "mining rights" thereby granted and conveyed to the Duncan-Spangler Company were merely and solely the right to *use* the *surface* for the manifold purposes enumerated with exactness and care in the paragraph upon which the appellee relies. The use of the surface for the purposes specified was essential to the mining and removal of the seam of coal covered by the lease, and appellee was granted the right to use it as fully and completely as the Blubaker Company might have used it under the provisions of the various conveyances to that company. There is a clear distinction between granting to the owner of an underlying mineral estate the right to *use* the overlying surface for specified purposes, essential to the enjoyment of his mineral estate, and releasing him from his duty to *support* that surface. The phraseology of the reference, in the concluding portion of the grant, to the sources from which the lessor had acquired the "mining rights,

privileges and grants," detailed, specified and described, in the body of the paragraph is significant. It does not read: "Being *all* the mining rights" etc. Under the most liberal construction which could reasonably be placed upon it, the language used was equivalent to saying, "Being *the same* mining rights" etc. When the familiar principle that an express mention of one or more rights in a grant is an implied exclusion of any others is applied, the word "being" must be construed as referring to and including only those rights and privileges specified in the preceding portion of the paragraph; it cannot be understood as adding anything to the rights specifically recited.

The use of the phrase, "being the same" in a generalization following a detailed description was considered by our Supreme Court in *Fidelity Mortgage Guarantee Co. v. Bobb et ux.,* 306 Pa. 411, 160 A. 120. In that case Bobb, having acquired from Rose M. Goodwin by a single deed two adjoining lots, designated respectively as the 63d Street property and the City Avenue lot, conveyed what by detailed description was the 63d Street property. The deed from Bobb also contained a recital reading: *"Being the same* premises which Rose M. Goodwin, singlewoman, by Indenture bearing date the 29th day of August, 1924, etc. ...... granted and conveyed unto Joseph Bobb in fee." (Italics supplied)

Upon the question whether Bobb still had title to the City Avenue lot, notwithstanding the broad language of his grant, Mr. Justice MAXEY held (page 418) that the clause "being the same premises" was there used for the purpose only of calling attention to the links in the chain of title, and that "the same" meant "a part of the same premises" included in the former conveyance, not "all of the same," and further, that the specific description of the 63d Street lot controlled over the subsequent general reference to both lots.

Reading the lease in its entirety, and having due regard for the general language with which the provision relating to mining rights closes, we are not convinced it discloses any intent upon the part of the Blubaker Company to assign to the Duncan-Spangler Company any of the waivers of support which the Blubaker Company then held or to release the Duncan-Spangler Company from the duty of supporting the overlying "E" seam.

As we read this record, we here have a case substantially on all fours with that of *Lenox Coal Co. v. Duncan-Spangler Coal Co.,* supra. There, as here, the Blubaker Company was the common lessor. In addition to the portions of the "E" and "D" seams involved in the case at bar, it owned the same veins under a tract of surface in another (Carroll) township in the same county.

In connection with its holdings in Carroll Township, it had the same surface rights and held the same waivers of support as in the present case. In 1901 it leased its lower, or "D," seam in Carroll Township to the predecessor in title of the Duncan-Spangler Company, the defendant in the case cited. The provisions of the lease with respect to the mining rights granted thereby contained no express waiver of damages "for letting down the superincumbent estate." In 1912 it leased the "E" seam to Cosgrove, predecessor in title of Lenox Coal Company, with actual knowledge upon his part that certain pillars had been pulled in the "D" seam thereby injuring the "E" vein. This Cosgrove lease contained a clause suspending royalties if mining became impracticable because of lack of support from the "D" seam, and also provided that the lessee took "subject to the prior rights secured to Duncan-Spangler Coal Company" by the prior lease. Construing the lease for the "D" seam, the Supreme Court held (p. 575), "there is no waiver of support in defendant's (Duncan-

Spangler's) lease nor any covenant therein from which one can be implied," and affirmed a decree awarding an injunction to the Lenox Company, upon the ground that, "in the absence of a release or waiver of support, mining operations must be so conducted as to leave intact the superincumbent estate."

Moreover, when consideration is given to the situation in which the parties stood, "the necessities for which they would naturally provide, the conveniences they would probably seek to secure, and the circumstances and relations of the property in regard to which they ......negotiated" (*Lacy v. Green et al.*, 84 Pa. 514, 518; *Meigs v. Lewis*, 164 Pa. 597, 600, 30 A. 505) it seems almost incredible that the Blubaker Company would have even considered giving the Duncan-Spangler Company in 1907 the rights the latter now claims in connection with the "D" seam. The Blubaker Company, when it leased the "D" vein to the Duncan-Spangler Company, retained its ownership and all its rights in the "E" seam. It had every reason to provide against any possibility of injury to that seam. It knew the Duncan-Spangler Company intended to mine and remove the coal in the portion of the "D" seam covered by its lease. For the Blubaker Company to have waived, under the circumstances then existing, its right to have its "E" seam supported, or to have released the Duncan-Spangler Company from liability for any or all damages to the "E" seam through the removal of the "D" vein, would have been unreasonable. These considerations fortify us in our conclusion that the only mining rights granted, or intended to be granted, under the lease of 1907 were the rights to the use of the surface for the purposes specifically outlined therein.

The course of the subsequent events disclosed by the record also supports our disposition of the controlling question involved upon this appeal.

When, six years later, the Blubaker Company nego-

tiated its lease, dated June 25, 1913, of approximately half of the Susquehanna "E" seam to the Watkins Company, appellant's predecessor, it no longer had any purpose of its own to serve by reserving anything out of the grant. Hence, the comprehensive language of the lease of the four hundred acres of the "E" vein in 1913 as compared with that of the eight hundred acres of the "D" seam in 1907, viz: *"all* and *singular* the mining rights and privileges and *release* of *damages,* owned by the lessor ...... so fully as the same were acquired ...... from its various grantors, the same as though [they] had been herein recited in full." (Italics supplied)

By this language the Blubaker Company transferred to appellant's predecessor all of its rights to the use of the surface over the coal described in the lease and specifically included the "release of damages" for any failure to support that surface which it had acquired from the owners thereof. As there was nothing in the lease of the underlying seam to appellee in 1907 from which it could be implied that the Blubaker Company waived its common law right to support for its retained overlying vein, it follows that such right of support for the portion of that seam leased to the Watkins Company in 1913 passed to the latter as an incident of the grant to it, and through it to appellant.

Reference was made during the oral argument, and in the briefs, to a subsequent lease from the Blubaker Company to the Duncan-Spangler Company covering the greater part of the "D" seam in Susquehanna Township as described in the lease of 1907 between the same parties. It was dated May 29, 1915, nearly two years subsequent to the lease to the Watkins Company of a portion of the "E" seam. In addition to higher royalties, this 1915 lease included a warrant of attorney to confess judgment and an arbitration provision. An effort was also made to increase the mining rights of

the lessee by the insertion of the following: "And the said Lessor hereby grants unto the said Lessee, its successors and assigns, all and singular the mining rights and privileges and *release of damages* owned by the Lessor in reference to the coal in all of the above described land so fully as the same were acquired by the said Lessor by the several deeds to it from its various grantors for the coal in the lands above described, the same as though the mining rights and privileges in said deeds contained had been herein recited in full." (Italics supplied)

Counsel for appellant contend this 1915 lease was a substitute for the 1907 one and counsel for appellee that it was a continuation and modification of that lease. We see no necessity for considering and disposing of that question. Whatever may have been the effect of the lease of 1915 in the way of enlarging the rights of the Duncan-Spangler Company in the approximately four hundred acres of the "D" vein underlying the portion of the "E" seam which had not been leased to the Watkins Company, it is clear that, as to the four hundred acres of the "E" seam conveyed by the Blubaker Company to Watkins in 1913 and now vested in appellant, nothing done by the Blubaker Company in 1915 could in anywise affect the right to support which the Watkins Company acquired in 1913: *Lenox Coal Co. v. Duncan-Spangler Coal Co.*, supra, at page 576.

The record also discloses that on December 31, 1932, ten years after appellant had acquired its portion of the "E" vein, the Blubaker Company entered into a rather complicated contract with the Duncan-Spangler Company relative to the latter's mining operations in the "D" seam. Reference is made therein to the lease of 1915 and a modification thereof in 1916, but none of the provisions of this contract could affect any of the rights of appellant as fixed between the Blubaker and Watkins companies in 1913. There is one paragraph, however,

of this contract which illustrates the attitude at that time of the Duncan-Spangler and Blubaker companies toward the right of support which appellant now asserts with relation to its portion of the "E" seam. It reads:

"Sixth. The parties hereto recognize and hereby declare it to be a fact that there is a certain portion of the mine of the Duncan-Spangler Coal Company in the territory yet remaining within the terms of said lease of May 29, 1915, in which pillars may not be drawn until the Pennsylvania Coal & Coke Corporation operating the "E" seam of coal above has finished its operation in such particular section, without endangering the workings of said Pennsylvania Coal & Coke Corporation. The parties hereto therefore agree that in any year or years in which the Duncan-Spangler Coal Company is prevented from producing the minimum quantity of coal required to be mined and removed under its said lease as hereby modified, by reason of the fact that, in order to produce such minimum quantity of coal, it would be necessary to mine out coal, the removal of which would injure or endanger the Pennsylvania Coal & Coke Corporation in its operations on the "E" seam of coal, then and in such event there shall be a proportionate abatement of said minimum requirement, the amount of such abatement to be determined by the engineers of the respective parties," etc.

It is quite apparent that appellee's conception of appellant's rights underwent a complete change within a comparatively short period of time.

For the reasons stated we are of opinion that appellant is entitled to the relief sought by its bill—an injunction enjoining and restraining appellee from continuing the mining of coal in its "D" seam in such manner as to cause a subsidence of any part of the "E" seam covered by appellant's lease and an award, in such amount as the court below may fix, for the damages heretofore suffered by appellant through the failure

of appellee to support appellant's overlying "E" seam of coal. The eighth, twelfth, thirteenth, fourteenth, fifteenth and sixteenth, assignments of error must be sustained.

Decree reversed, injunction reinstated, and record remitted for further proceedings not inconsistent with this opinion.