## Commonwealth *v.* Fisher, Appellant.

Argued January 4, 1950. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Richard Henry Klein,* with him *Marshall R. Anspach,* for appellant.

*John C. Youngman,* Special Counsel, with him *Candor, Youngman & Gibson, T. McKeen Chidsey,* Attorney General, and *H. Albert Lehrman,* Deputy Attorney General, for appellee.

Opinion by Mr. Justice Horace Stern, April 10, 1950:

The adjudication of this controversy depends on the proper interpretation of the language reserving mineral rights in a deed of conveyance of a tract of land from William Rawle et al. to Jacob S. Young et al. dated August 28, 1855. The deed in question contained the following provisions: ". . . the said parties of the first part hereto [the grantors] do hereby reserve to themselves their heirs executors administrators and assigns forever the full entire complete and exclusive ownership and right as though the present conveyance had not been made to all metals ores minerals coal mine-banks and deposits of ores minerals metals or coal which are or may be in or upon or which may at any time be discovered in or upon any part of the hereinbefore bargained and sold land and premises. And the said parties of the first part hereto do hereby reserve forever the full free absolute and exclusive right and authority for themselves their heirs executors administrators or assigns personally or by their agents workmen or servants at all time or times whenever it may suit their or any of their convenience to enter into and upon and pass over any part or parts of the above described premises and to explore search for and excavate any and every kind of ore mineral metal or coal and to dig excavate or penetrate any part of the said premises and at all times to have free ingress and egress for themselves or their heirs executors administrators or assigns or their workmen or persons employed by them or either of them with or without horses teams oxen mules carts sleds or wagons to dig mine raise and take remove and carry away any and every kind of ore mineral metal or coal which may be found or discovered in or upon any part or parts of the hereby granted bargained and sold land provided always that such digging explorations or searches shall

be conducted with as little injury or damage to the said Jacob S. Young Jacob P. Findlay and William R. Young [the grantees] their heirs or assigns as shall be practicable consistently with the success of the same and the said Jacob S. Young, Jacob P. Findlay and William R. Young do hereby for themselves their heirs executors administrators and assigns covenant grant promise and agree to and with the said parties of the first part hereto their heirs executors administrators and assigns that neither of them shall and will at any time or times or in any manner hinder impede delay or in anywise obstruct the full and free exercise of all any and every the rights and privileges herein reserved or conditioned and that neither of them shall or will at any time or times or in any manner interfere with the property and ownership hereby reserved to the said parties of the first part hereto of all and every the mines metals minerals coal ore or ore-banks in or upon the above described tracts or parcels of land by these presents bargained and sold to the said Jacob S. Young Jacob P. Findlay and William R. Young their heirs and assigns."

The title of William Rawle et al., grantors, to the reservation of the mineral rights descended through mesne conveyances to Donald E. Fisher, the present defendant; the title of Jacob S. Young et al., grantees, to the surface of the land descended through mesne conveyances to the Commonwealth of Pennsylvania, the present plaintiff. The tract in question was purchased by the Commonwealth with moneys of the Game Commission License Fund. It is mountain land which has been timbered over; it is held by the Commonwealth as a game habitat; it contains no buildings, railroad lines, public highways, or improvements of any kind. It is largely underlain with bituminous coal which, for the past fifteen years, defendant has been deep mining, but which he has now started to strip mine in order to excavate coal which can be removed in no other manner.

The area of coal thus far uncovered is approximately 2800 feet long and from 38 to 70 feet wide; the vein is about 42 inches thick; the overburden removed averages in depth from 12 to 20 feet. In compliance with the Bituminous Coal Open Pit Mining Conservation Act of 1945 defendant has filed a bond and has contracted for the back filling of the stripping operation.

Plaintiff filed the present bill in equity to restrain defendant from further strip mining on the tract. It contends that defendant has no right to practice that method of digging because the use of power machinery to remove the overburden was not a customary method of mining bituminous coal in 1855 when the mineral rights were separated from the title to the surface, and also because plaintiff is entitled by law to surface support. Defendant filed an answer to the bill, but there is no dispute as to the facts. The court below granted the injunction prayed for, and defendant appeals.

Neither of the grounds on which plaintiff relies can be sustained. Defendant, as assignee of the grantors under the deed of 1855, acquired the "full, entire, complete and exclusive ownership" of the coal "in or upon any part of" the land with the right to "dig, excavate or penetrate *any part* of the said premises". There is no restriction limiting that right nor any provision as to the method of severing the coal. What was said in *Richardson v. Clements,* 89 Pa. 503, 506, is applicable here, viz.: "The language used indicates no intention to deny the use of such improved process as science may discover or mechanical ingenuity invent. . . ." Plaintiff admits that the coal which defendant seeks to obtain by stripping operations cannot be recovered by any other process. True it is that strip mining was not used in 1855 in the case of bituminous deposits although it was the earliest known method in Pennsylvania of mining anthracite coal and was originally performed by hand; the invention and use of power shovels for the re-

moval of the overburden was, of course, a later development, but there is no rule of law which would preclude defendant, having the right to mine the coal, from using methods for that purpose made possible by modern machinery and inventions. It was said in *Oberly v. H. C. Frick Coke Co.*, 262 Pa. 83, 87, 104 A. 864, 865: "The right to work the mine involves the right to penetrate the surface of the soil for the minerals, to remove them in the manner most advantageous to the mine owner, and to use such means and processes in mining and removing them as may be necessary in the light of modern improvements in the arts and sciences." We said in *Taylor v. Heffner* 359 Pa. 157, 163, 58 A. 2d 450, 453: "It cannot be said that because motor vehicles were rarely used at the creation of the right of way that it was within the contemplation of the parties not to permit the dominant estate to use improved means of travel. Where, as here, the grant of the easement is unrestricted, the grantee is given such rights as are necessary for the reasonable and proper enjoyment of the thing granted." In *Dowgiel v. Reid*, 359 Pa. 448, 59 A. 2d 115, an easement of a "private road or cartway" was created in 1835; the present owners of the easement proposed to erect poles and to string copper wire along the road for the purpose of providing their farm with electrical facilities. We held that they had the right so to do even though, when the easement was granted, the only need for the road was as a pathway over which pedestrians, horses and vehicles could travel, and telephones, electric lights and other electrical devices were, of course, totally unknown. The opinion (p. 453, A. p. 118) contained a quotation from 19 C. J. 975, 976 [§219] b. to the effect that "Where a way is granted or reserved without any limitation as to its use, it will not necessarily be confined to the purposes for which the land was used at the time the way was created, but may be used for any purpose to which the land accommo-

dated by the way may naturally and reasonably be de-self of modern inventions if by so doing he can more fully exercise and enjoy or carry out the object for which the way was granted." The application of the principle illustrated by these authorities clearly establishes defendant's right to excavate the coal of which he is the owner by a method presently in use for that purpose even though not anticipated, perhaps, by the parties to the deed of 1855.

As to defendant's alleged legal duty to support the surface of the land it must be conceded that, if such a duty exists, he cannot dig away and destroy the surface down to the subjacent vein of coal, for the physical injury to plaintiff in that event would obviously be the same as if the surface were allowed to subside due to lack of support from beneath. No principle of law is more firmly established in this Commonwealth than that, where there is a severance of the mineral rights from the title to the surface, the owner of such rights is obligated to support the superincumbent estate; the owner of the surface is entitled to that support, not as an easement or right depending on a supposed grant, but as a proprietary right at common law.[1] The owner of the

[1] *Jones v. Wagner*, 66 Pa. 429; *Coleman v. Chadwick*, 80 Pa. 81; *Carlin & Co. v. Chappel*, 101 Pa. 348; *Pringle v. Vesta Coal Co.*, 172 Pa. 438, 33 A. 690; *Robertson v. Youghiogheny River Coal Co.*, 172 Pa. 566, 33 A. 706; *Noonan v. Pardee*, 200 Pa. 474, 50 A. 255; *Youghiogheny River Coal Co. v. Allegheny National Bank*, 211 Pa. 319, 60 A. 924; *Berkey v. Berwind-White Coal Mining Co.*, 229 Pa. 417, 78 A. 1004; *Penman v. Jones*, 256 Pa. 416, 100 A. 1043; *Lenox Coal Company v. Duncan-Spangler Coal Co.*, 265 Pa. 572, 109 A. 282; *Charnetski, Administrator, v. Miners Mills Coal Mining Co.*, 270 Pa. 459, 113 A. 683; *Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 304, 32 A. 2d 227, 235; *Pennsylvania Coal & Coke Corporation v. Duncan-Spangler Coal Co.*, 132 Pa. Superior Ct. 533, 1 A. 2d 511; (aff. 333 Pa. 272, 3 A. 2d 356).

surface may, however, by contract or by waiver, re-
linquish the right,[2] although such relinquishment should
not be implied in the absence of language clearly indi-
cating the intention of the parties to that effect.[3] In this
case the deed of 1855 did, in our opinion, impliedly re-
lease to the grantors the obligation of surface support.
It reserved to them the "ownership and right" of the
coal "as though the present conveyance had not been
made", and irrespective of whether the coal was "in or
upon any part of" the land. It further reserved to them
"the full, free, absolute and exclusive right and authority
. . . to excavate" the coal and *to dig, excavate or pene-
trate any part of the said premises*" for that purpose.
It provided that "such digging . . . shall be conducted
with as little injury or damage" to the grantees "as shall
be practicable *consistently with the success of the same*";
in other words, the success of the digging and removal
of the coal was to be the *paramount objective,* and the

---

[2] *Scranton v. Phillips*, 94 Pa. 15, 21, 22; *Madden v. Lehigh Valley
Coal Co.*, 212 Pa. 63, 61 A. 559; *Miles v. Pennsylvania Coal Co.*, 214
Pa. 544, 63 A. 1032; 217 Pa. 449, 66 A. 764; *Kellert v. Rochester &
Pittsburg Coal & Iron Co.*, 226 Pa. 27, 74 A. 789; *Stilley v. Pittsburgh-
Buffalo Company*, 234 Pa. 492, 83 A. 478; *Graff Furnace Co. v. Scran-
ton Coal Co.*, 244 Pa. 592, 91 A. 508; *Kirwin v. Delaware, Lackawanna
& Western R. R. Co.*, 249 Pa. 98, 94 A. 468; *Miles v. The New York,
Susquehanna & Western Coal Co.*, 250 Pa. 147, 95 A. 397; *Gordon v.
Delaware, Lackawanna & Western R. R. Co.*, 253 Pa. 110, 97 A. 1032;
*Commonwealth v. Clearview Coal Co.*, 256 Pa. 328, 100 A. 820; *Weak-
land v. Cymbria Coal Co.*, 262 Pa. 403, 105 A. 558; *Atherton v. Clear-
view Coal Co.*, 267 Pa. 425, 110 A. 298; *Householder v. Quemahoning
Coal Co.*, 272 Pa. 78, 116 A. 40.

[3] *Coleman v. Chadwick*, 80 Pa. 81; *Williams v. Hay*, 120 Pa. 485,
14 A. 379; *Robertson v. Youghiogheny River Coal Co.*, 172 Pa. 566, 33
A. 706; *Weaver v. Berwind-White Coal Co.*, 216 Pa. 195, 65 A. 545;
*Dignan v. Altoona Coal & Coke Co.*, 222 Pa. 390, 71 A. 845; *Penman v.
Jones*, 256 Pa. 416, 100 A. 1043; *Hines, Director General, v. Union
Connellsville Coke Co.*, 271 Pa. 219, 114 A. 521; *Pennsylvania Coal &
Coke Corporation v. Duncan-Spangler Coal Co.*, 132 Pa. Superior Ct.
533, 1 A. 2d 511; (aff. 333 Pa. 272, 3 A. 2d 356).

grantors were to have the right to conduct their enterprise successfully and to the fullest extent no matter what the injury or damage to the surface provided it be as little as practicable. The grantees of the surface agreed that they would not "in any manner hinder, impede, delay, or in anywise obstruct the full and free exercise of all, any and every, the rights and privileges . . . reserved" by the grantors. Whether a deed impliedly releases the right of surface support must depend in each instance upon its terms; here the cumulative effect of its provisions would seem fairly to give to the grantors, and their assigns, who reserved the ownership and authority to excavate the coal, the right to remove *all* of it whether upon the land, or near the surface, or lying deep within it, and by any method, old or new, appropriate and necessary for the purpose.

It may be added that it is doubtful whether, in any event, plaintiff would be entitled here to equitable relief. The tract in question is unimproved mountain land; any damage caused to its surface would be merely of a temporary nature in view of the provisions of the Bituminous Coal Open Pit Mining Conservation Act of May 31, 1945, P. L. 1198, as amended by the Act of May 23, 1949, P. L. 1730, which provides that before any operator shall engage in open pit mining of bituminous coal he must file a bond conditioned for the faithful performance of all the requirements of the Act, one of which is that he must, within one year after the operation is completed, place sufficient overburden or earth in the open cut to cover the exposed face of the unmined coal, and, within three years after the operation is completed or abandoned, plant trees, shrubs or grasses upon the land affected thereby. Even before the enactment of this statute it was held in a number of cases, under circumstances somewhat similar to those here present, that relief by injunction would be denied and the owner of the surface left to his remedy to recover damages in

an action at law: *Berkey v. Berwind-White Coal Mining Co.,* 220 Pa. 65, 69 A. 329; 229 Pa. 417, 78 A. 1004; *Woods v. Pittsburg Coal Co.,* 230 Pa. 197, 79 A. 499; *Plummer v. Hillside Coal & Iron Co.,* 96 Pa. Superior Ct. 180.

The decree is reversed at plaintiff's costs. The record is remanded to the court below with direction to retain the bill for any application that may be made by plaintiff hereafter to compel defendant's compliance with his obligation to replace the overburden and make the plantings as provided by statute.

---

DISSENTING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

The Commonwealth purchased the surface estate of a 990 acre tract of land in Lycoming County for use as (a) State Game Preserve (b) Wild Life Management and (c) Public Recreation. The owner of the coal estate has commenced a strip mining operation. According to the findings of the hearing judge, defendant has already uncovered the overburden from the bituminous coal for an area of approximately 2800 feet long and 38 to 70 feet wide, such overburden so removed being from 12 to 20 feet deep. The court below granted an injunction restraining such operation. This appeal followed.

The predecessor-owners of the surface estate, under their deed, neither by *express words* nor *necessary implication* waived or released their rights in the land. I would, therefore, affirm the decree of the court below.

The facts, as narrated by the majority, are not in dispute. Grantors, owners of the fee, separated the surface and minerals. They conveyed the land, *reserving* the minerals, including coal. The question is whether the words of the *reservation* expressly or by necessary implication waived or released surface rights.

When coal is conveyed apart from the land, or *vice versa,* two separate estates in realty exist, each of which is distinct from the other: *Smith v. Glen Alden Coal Co.,*

347 Pa. 290, 32 A. 2d 227; *Babcock Lumber Company v. Faust et al.,* 156 Pa. Superior Ct. 19, 28, 39 A. 2d 298, and cases therein cited. The respective rights of owners of the surface and coal are well settled. While there is an estate in the surface and an estate in the coal, there also exists a right, sometimes referred to as the third estate, viz.: the right of surface support. For an accurate summary of these principles see: *Miles v. Pennsylvania Coal Company,* 214 Pa. 544, 63 A. 1032. The opinion of Judge KELLY of Lackawanna County was adopted by this Court per curiam. He said, p. 547:

"The law upon the respective rights of the owners of the surface and the owners of the coal, is clearly stated in Barranger and Adams on Mines and Mining, 675 et seq.: 'Where there has been a horizontal division of the land, the owner of each subjacent estate owes to the owner of the superincumbent estate the support of his land in its natural condition, and the owner of the superincumbent estate has conversely a right to this support. This is an absolute proprietary right, necessarily arising out of the ownership of the surface, and not an easement depending upon a grant. The mine owner in taking out his minerals must leave sufficient support for the superincumbent land. This he may do by leaving ribs or pillars, or by constructing artificial supports. If he fails to do this, and the land sinks he is liable for the damage that occurs to the surface owner by reason thereof, and he may be enjoined from the further removal of minerals. Whether the mine owner has worked his mine skillfully or negligently does not affect the existence of the right to surface support. . . .' 'The owner of the minerals has a right to so much only as he can take out without injury to the surface. . . .' 'Though the right of surface support is absolute, yet the subjacent owner may be relieved of the corresponding obligation by a release from the surface owner, or by the terms of the instrument creating his estate. But upon him who

thus attempts to control the rule of law, lies the burden of proof. To destroy or injure the surface, there must exist some statutory or contract authority. The intention to part with the right of surface support must appear by plain and explicit language in the grant of the minerals, or by an express exception from a reservation of them. It may not be taken away by mere implication from language not necessarily importing such a result.' These general principles are fully supported by the cases in Pennsylvania: Lowry v. Hay, 2 Walk. 239; Gumbert v. Kilgore, 6 Cent. Repr. 406; Robertson v. Coal Co., 172 Pa. 566; Jones v. Wagner, 66 Pa. 429; Scranton v. Phillips, 94 Pa. 15; Coal Co. v. Hopkins, 198 Pa. 343; Williams v. Hay, 120 Pa. 485; and McDade v. Spencer, 6 Lacka. Leg. News, 84."

The burden rests upon him who seeks to assert the right to destroy or injure the surface. There exists no applicable statutory enactment. Defendant must rely upon a construction of the words of the reservation in the deed. Such words must be interpreted in the light of the apparent object or purpose of the parties and of the conditions existing when the words were employed: *Price et al., Trustees, v. Anderson et al.,* 358 Pa. 209, 220, 56 A. 2d 215, and the cases therein cited. In 1855, when the present deed was executed, it is conceded that strip mining was unknown in the bituminous coal fields. For the past fifteen years defendant deep mined only, but now has commenced to strip mine. It is, therefore, most persuasive that when, in 1855, the owners of the combined surface and coal estates made the "horizontal division", both grantors and grantees contemplated coal mining operation as they *then* understood them.

Upon separation of the estates, the owner of the coal possesses an implied easement (even by necessity) to pass over the surface in order to mine the coal and remove it: *Big Mountain Improvement Company's Ap-*

*peal,* 54 Pa. 361; *Webber v. Vogel,* 159 Pa. 235, 28 A. 226; *Babcock Lumber Company v. Faust et al.,* supra.

In the light of these principles, the court is required to construe the language of the reservation. In separating the two estates and making the reservation of the coal, the deed states that the ownership of the coal is to remain: "as though the present conveyance had not been made". I agree with what the Chancellor said: "There is a distinction between ownership of minerals and mining rights. Carlin v. Chappel, 101 Pa. 348. Parties may own all of the minerals as though the conveyance had not been made and still not be able to remove all of them due to a limitation on the mining rights. The remaining parts of the reservation which are relied upon by the defendant have to do with the right of the defendant in entering upon the land, and excavating and digging coal." The remaining words are: "to enter into and upon and pass over [the surface]", and "to explore, search for and excavate"; "to dig excavate or penetrate any part of the said premises" and "at all times to have free ingress and egress" and "to dig mine raise and take remove and carry away any and every kind of ore mineral, metal or coal . . . [and] that such digging explorations or searches shall be conducted with as little injury or damage . . . as shall be practicable". Certainly such words and phrases do not *expressly* release or waive surface rights. Neither do they *unequivocally* disclose the intent of the parties that the owner of the coal is to be permitted to destroy the entire surface of the land in order that he might mine the underlying coal. Unless the right has been released or waived, the owner of the surface is entitled to the unrestricted enjoyment of it except for the necessary means of egress and ingress, exploration, and reasonable facilities for mining and hauling the coal. Under the surrounding circumstances, the equivocal words of this

deed seem more applicable to deep mining than to strip mining.

Where this Court (and courts below) has construed words and phrases concerning releases or waivers of surface rights, the cases have related to surface *support*. But the legal principle is the same. Where the surface sinks because of lack of proper support, that portion of the land becomes as useless to the owner as if the overburden had been removed. In the absence of *express* waiver or release, the following words have been held *not* to waive impliedly or release surface support: "All the merchantable coal in and underlying all that tract of land, . . . with the right to mine and carry away all the said coal and with all the mining rights and privileges necessary or convenient to such mining and removal of the same.": *Weaver v. Berwind-White Coal Company,* 216 Pa. 195, 65 A. 545;

"All the coal and other minerals, lying or being in, upon or under [a certain tract]." "And the [grantee] is hereby granted the full and exclusive privilege, right and liberty of entering at will upon said land and searching for, quarrying and mining, raising, delivering, taking and carrying away said coal and other minerals, such mining operations however are not to interfere with the surface of said land. . . ." ". . . and all of the said rights . . . to be used and exercised without any liability for damages arising or resulting from the use and exercise of the same. . . ." *Dignan v. Altoona Coal & Coke Company,* 222 Pa. 390, 71 A. 845;

"To have and to hold the said coal in, under and upon the said piece or parcel of land . . . together with the sole and exclusive right to mine and remove the same . . . until all . . . the merchantable coal in, under and upon the . . . premises shall have been mined out and removed." ". . . to mine all the merchantable coal upon the . . . premises in a skillful and careful manner . . .

be.": *Murray v. Mineral Spring Coal Company et al.,* 23 D. & C. 280.

My view is further strengthened by the use in the deed of the following language: ". . . provided always that such digging explorations or searches shall be conducted with as little injury or damage to the said [grantees] their heirs or assigns as shall be practicable consistently with the success of the same. . . ."

It is unreasonable to suppose that this language would have been used if the parties had already agreed that grantees released or waived their rights in the surface. It is difficult to comprehend what possible use an owner of the surface could make of this land if the owners of the coal could freely enter upon and tear apart any portion or all of the surface in order to remove the overburden and take out the coal. Strip miners are required by statute to fill in excavations. But unsightly scars from such operations, nevertheless, remain visible for many years. The damage to the land, including trees and foliage, is irreparable. Furthermore, strip mining operations would obviously defeat the very purpose of the Commonwealth's use.

Because, in my opinion, defendant has no right to strip mine on this tract, I would also affirm the action of the court below in granting plaintiff *equitable relief.* I would not relegate plaintiff to an action at law for money damage, which would inevitably result in successive and numerous law suits, as and when the strip mining was extended. The cases cited by the majority in their facts have no application to this case. Defendant's virtual seizure of plaintiff's property was not an unintentional encroachment. It amounts to a seizure of plaintiff's property without its consent. Under the facts there is no adequate remedy at law. See Restatement, Torts, §933; *Quinn v. American Spiral Spring & Manufacturing Co.,* 293 Pa. 152, 159, 141 A. 855. The cases cited by appellant dealing with the doctrine of "balance of injury" or "relative hardship" have no application to

the present case. The typical illustration of this principle is cited in Restatement, Torts, §941, viz.: the erection of a large building which inadvertently encroaches slightly upon the adjoining premises. See also: *Evans v. Reading Chemical Fertilizing Co., Ltd.,* 160 Pa. 209, 28 A. 702.

For these reasons I dissent.