IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA 1880.

## Scranton et al. *versus* Phillips et al.

1. Where one grants the surface of land and reserves the mines beneath, the implied right of support to the surface, which passes with said grant, may, by apt words in a deed of conveyance be excepted from said grant, and where such exception has been made, the grantor or those who claim through him may mine all the coal, even though by said mining the surface should fall in.

2. Jones *v.* Wagner, 16 P. F. Smith 429; Horner *v.* Watson, 29 Id. 242; and Coleman *v.* Chadwick, 30 Id., distinguished.

March 12th 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas of *Luzerne county:* Of July Term 1878, No. 210.

Case by William J. Phillips and others, trustees of the Calvinistic Methodist Church of Hyde Park, against Seldon T. Scranton and others, heirs and legal representatives of George W. Scranton, deceased, and James H. Gulick, administrator of Joseph Fellows, deceased, for alleged damages to the lot and building of said church, sustained by the settling of the surface of the lot, occasioned by the mining of coal by the defendants, the Scrantons, who were the lessees of Fellows, the other defendant.

The substantial portions of the contract, and the material facts, will be found set forth in the opinion of this court.

At the trial, before Harding, P. J., the plaintiffs presented the following point, to which is appended the answer of the court:

"Under the legal effect of the contract of May 1st 1860, between Fellows and Emily E. Preston, and her possession under it, neither Fellows, nor any parties claiming under him by title subsequent thereto, could so mine and remove the coal under or

(15)

[Scranton *v.* Phillips.]

subjacent to the lot as to interfere with or let down the surface, without liability for all damages therefor, and the plaintiffs are entitled to recover."

Ans. "The plaintiffs' counsel undoubtedly mean by this point that if the defendants took out the coal underlying the lots immediately adjoining the one in question, so that the surface above fell in, and thus caused the church lot to fall in also, because of the want of lateral support, the plaintiffs still would be entitled to recover. In that view we affirm the point."

The defendants submitted, inter alia, the following point:

That if the jury believe, under the evidence, that there was no fall of the roof under the church lot, but that the injury to said lot was caused by a fall of roof in another part of the mine, that affected the lateral support of the church lot, then there can be no recovery against the defendants, it being a case of *damnum absque injuria.*

The court answered: "That point has been answered in the general charge, though I will again answer it more at length. If the defendants mined out the coal under lots immediately adjacent to that of the plaintiffs, and which belonged to Joseph Fellows, and were leased by him to the defendants, and by reason of such mining this church property was injured, then the plaintiffs will be entitled to recover here. In that view the point is negatived. If, however, like mining had been done by the defendants in a more remote quarter, and of coal to which they had acquired rights through a source other than Joseph Fellows, and the plaintiffs' lot had been similarly injured, the rule as to lateral support might not be as we now state it. But so far as this particular block of lots is concerned, as indicated by the map offered and received in evidence, the plaintiffs were entitled to support for their lot, not only directly underneath it, but adjacent to it."

In the general charge, the court, inter alia, said:

["Now, it was clearly the intention of Mr. Fellows that the surface of the lot should be fully held and enjoyed by Miss Preston, he reserving to himself all the coal lying below it. That is to say, if reasonable intendment amounts to anything, under the reservation, Mr. Fellows had the right to mine and take out so much of the coal below as was consistent with the enjoyment of the surface by Miss Preston. In other words, he had the right to take out all the coal that could be got, leaving a reasonable support for the surface. Any other construction would be subversive of the principle long ago grown into a maxim, ' *sic utere tuo ut alienum non lædas*'—make use of your own property in such a manner as not to injure that of another. Moreover, it would present the anomalous feature of a grant of an estate in land, accompanied by a reservation totally destructive of the grant.]

"I do not mean to say that covenants cannot be made between a

[Scranton *v.* Phillips.]

vendor and vendee, under which a right to the surface of a lot may pass at first, to be succeeded by a right to a mere hole afterwards; all I mean to say is, that the covenants between Mr. Fellows and Miss Preston are not of that character.

["Hence, if you shall be satisfied from the testimony that these defendants so mined and took out the coal underlying the plaintiffs' lot that the surface fell in, and injury ensued therefrom to both the lot and the church building upon it, there may be a recovery in this action compensatory for that injury.] * * * Several other witnesses who examined the underground condition of things after the fall or crack had occurred, tell us that a pillar of coal was pointed out to them by Mr. Phillips, but whether or not it was under the lot in question they are unable to say of their own knowledge. They went within thirty or forty feet of this pillar in company with Mr. Phillips. [All of them say, however, that the fall or crack in the surface, and in the church building, was caused by taking out the coal under the surface of this particular lot, and the others immediately adjacent to it, without leaving sufficient supports. We say to you, in this connection, that the plaintiffs were entitled not only to a reasonable and proper support for their estate directly underneath it, but also to a like support from the adjacent lots embraced in the block, of which it formed a part."]

The verdict was for plaintiffs for $9740.14, and after judgment thereon, defendants took this writ and alleged that the court erred in the answers to the above points, and in the portions of the above charge included in brackets.

*Andrew T. McClintock,, Alfred Hand, I. J. Post* and *Stanley Woodward,* for plaintiffs in error.—For more than half a century coal has been mined through the Lackawanna valley under agreements between the surface owner and the coal owner, by which the former has assumed all risks under ground. Practically the surface rights have been held subservient to the mining rights. These agreements have been held sacred, and it was never supposed that it was not a proper subject-matter of contract. This case presents for the first time the validity of such a contract. The court ignored the fact that Emily Preston took this surface-lot with a qualified right of support. That qualified right is expressed, 1. In the reservation of "all the coal, with the exclusive right to mine and remove the same;" 2. The purchase of the lot, "subject to the above reservations and restrictions, for $600;" 3. The "release of Fellows, and his assigns, from any liability from any injury that may result to the surface of said premises from the mining and removal of said coal," with a quit-claim, &c. There can be no misapprehension of the meaning of these words. The injury now complained of was intended to be released by the parties. It was error in the court to assume that the right to drop the surface was totally destructive of

13 NORRIS—2

[Scranton *v.* Phillips.]

the grant.    This court has been disposed to give large liberty and rights to the mining interests of the state : Turner *v.* Reynolds, 11 Harris 199 ; Caldwell *v.* Fulton, 7 Casey 475 ; Harlan *v.* Lehigh Coal and Navigation Co., 11 Id. 287 ; Jones *v.* Wagner, 16 P. F. Smith 430 ; Horner *v.* Watson, 29 Id. 250 ; Coleman *v.* Chadwick, 30 Id. 81 ; Brown *v.* Torrence, 7 Norris 186.

*Henry W. Palmer* and *Henry M. Hoyt*, for defendants in error.—Under the contract of 1st May 1860, Joseph Fellows, and all claiming under him, remained under the duty of absolute support for the surface of this lot : Humphries *v.* Brogden, 12 Q. B. 739 ; Harris *v.* Ryding, 5 Mees. & Wels. 60 ; Smart *v.* Morton, 5 E. & B. 30 ; Jones *v.* Wagner, 16 P. F. Smith 429 ; Horner *v.* Watson, 29 Id. 250 ; Coleman *v.* Chadwick, 30 Id. 81.    There is no qualified right of support.    We either have the absolute right of support or no right.    There is no middle ground.    The construction contended for by the plaintiffs in error would totally destroy the grant.

Mr. Justice MERCUR delivered the opinion of the court, May 3d 1880.

This is an action on the case.    It was brought to recover for the damages done to the lot and building of the defendants in error, by reason of the mining of coal beneath, by the plaintiffs in error. The former owned the surface right of the land, the latter all the coal beneath the surface.

Joseph Fellows was the owner of a larger tract of land, of which the lot in question formed a part, underlaid with coal.    While thus the owner in fee, on the 1st of May 1860, he, by contract in writing, agreed to sell the lot on which the alleged damage was sustained to Emily E. Preston.    After describing the lot, the contract proceeds : " Excepting and always reserving all the coal beneath the surface of and belonging to said premises, with the exclusive right to the said Joseph Fellows, his representatives and assigns, to mine and remove the same by any subterranean process incident to the business of mining, and also to pass through the said premises by any subterranean passage to mine, and remove the coal from any adjacent lands, without the right, however, to enter upon the surface of said premises for any purpose whatever." Ten per cent. of the purchase-money was to be paid down, and the residue in ten annual instalments.    On the full payment of the purchase-money, Fellows was to execute and deliver a good and sufficient deed in fee-simple, " reserving the coal and privileges above stated, and with a full and unconditional release and discharge for ever, on the part of the said party of the second part, her heirs and assigns, to the party of the first part, his heirs and assigns, from any liability for any injury that may result to the

surface of the said premises from the mining and removal of the said coal; and with a quit-claim on the part of the party of the second part to the party of the first part, his heirs and assigns, of all right, title and interest in and to said coal, and the privilege of mining and removing the same as aforesaid." She took possession of the lot soon after, and made some payment thereon. Probably, early in 1861, the precise time is not shown, she transferred her interest under the contract to the defendants in error, who erected the church building thereon. They afterwards paid the residue of the purchase-money due on the contract, and on the 27th April 1867, Joseph Fellows conveyed the lot to them, "excepting nevertheless and always reserving all the coal beneath the surface of and belonging to the said premises, with the exclusive right to the said Joseph Fellows, his heirs and assigns, for ever to mine and remove the said coal by any subterranean process," as stated in the contract. "To have and to hold the said land subject to the exceptions and reservations as aforesaid." In the same deed, duly executed by the appellees, they also did thereby "grant and convey unto the said Joseph Fellows, his heirs and assigns, the exclusive and indefeasible right to mine and remove the said coal as aforesaid, to have and to hold the same unto the said Fellows, his heirs and assigns, for ever."

On the 30th July 1860, while Emily Preston held the equitable title to the surface, Joseph Fellows by indenture leased to said Scrantons "all the coal in and under said lot and other lands, for and during such term and period of time as shall be required therefor to mine and remove all said coal." The lease further stipulated "the said coal to be mined and taken out by said Scrantons in such manner as they may deem proper and according to their own discretion." They are not to be responsible for the falling in of said mines or the surface of said lands in any case whatsoever, nor shall they be required to leave pillars or other supports to prevent the falling of the surface, or for any other purpose except under certain lands, including the lot in question, where "the said Scrantons shall in mining leave such pillars and supports, as shall be deemed by those having experience in mining, to be sufficient to prevent the surface from falling in." This lease was duly acknowledged at its date, and recorded not long thereafter. In mining under this lease the alleged injury was done to the surface, and the action was brought against both lessor and lessees and their representatives.

The main contention arises under the agreement of 1st May 1860. The learned judge held substantially that it gave to Emily Preston, and those claiming under her, an unqualified right of support to the surface from the owners of the coal beneath. This conclusion is claimed to be sustained by the authority of Jones v. Wagner, 16 P. F. Smith 429; Horner v. Watson, 29 Id. 242, and

Coleman *v.* Chadwick, 30 Id. 81. An examination of these cases shows they were ruled on a state of facts essentially different from those in the present case, and therefore they do not control it. They dealt with presumed and implied rights and duties, in the absence of any specific agreement, as to the measure of care and skill in mining and removing the coal without leaving suitable supports. Hence, in Jones *v.* Wagner it was said, "contract may devote the whole minerals to the enjoyment of the purchaser without supports if the parties choose." Horner *v.* Watson was this: Horner was the owner of an upper mine. In excavating his coal he removed the ribs or pillars which supported the roof of his mine, thereby causing the surface above to sink and crack, so that the water therefrom flowed in and through his mine, and into a lower mine of Watson. It was held, the latter could recover from the former for the injury thereby sustained, although it resulted from the approved, established and customary practice of mining in that region and without negligence. That the surface could not be destroyed by following a prescription or custom, for a claim destructive of the grant could not be set up by any usage. Here, too, there was no specific agreement as to the manner in which the coal should be removed or the mine supported. The fact that the rights and duties of the parties might have been changed by agreement is clearly implied in that portion of the opinion in which it is said a careful examination of the agreement discloses nothing to take the case out of the rule stated. Coleman *v.* Chadwick also rules that when the owner of the whole fee, grants the minerals, reserving the surface, his grantee is entitled to so much only of the minerals as he can get without injury to the surface, and a custom contrary to such right would be unreasonable and invalid. There was no express agreement in this case as to the manner in which the mines should be worked, and the fact that the mining had been done according to the usual course and practice, and without any negligence, was held insufficient to protect from liability when there was an omission to leave ribs or pillars of coal or other supports for the surface. I dissented from the judgment in each of these last cases. Yet I recognise them as authority in cases where they apply. They do not apply to a case, like the present, of an express agreement fixing and defining the rights of the parties.

In the contract of 1st May 1860, Fellows agreed to sell "excepting and always reserving" all the coal. Coal in place is land. As early as Comyn *v.* Wheatley, Cro. Jac. 150, it was held in England that ejectment would lie for a coal mine. The objection that it was beneath the soil was held insufficient to defeat it. This case was cited approvingly in Caldwell *v.* Fulton, 7 Casey 475. It is there held that minerals beneath the surface of a tract of land, may be conveyed by deed, distinct from the right to the surface.

[Scranton *v.* Phillips.]

They are a corporeal hereditament, and may thus be severed by conveyance. So in Turner *v.* Reynolds, 11 Harris 199, it was held that a coal mine may be described and recovered, in an action of ejectment, as land, although the plaintiff did not claim or assert any title to the soil or surface of the tract, but only to the coal beneath. A mine right, severed from the ownership of the soil, may be regarded as a separate close, and compared to the lower story of a building. The law implies an obligation on his part to keep it in a suitable condition to support the upper stories owned by others, and that the owner of the upper story shall maintain the roof for the protection of those owning below him. There is, however, nothing in this implied duty and obligation to prevent either from being relieved therefrom by agreement with the other.

The contract with Emily Preston excepts from the agreement to convey a part of the land by clear and apt words. Fellows held the coal as absolutely after the contract was executed as before. It cannot be objected that the exception was as large as the grant and therefore void. The coal is a part of the land that would otherwise have passed it is true. By excepting that, and selling the surface of the land, enough property passed to the vendee to give full effect to the agreement. The court, therefore, erred in saying that the right contended for "would present the anomalous feature of a grant of an estate in land, accompanied by a reservation totally destructive of the grant:" Whitaker *v.* Brown, 10 Wright 197.

The exception proceeds "with the exclusive right to the said Joseph Fellows, his representatives and assigns, to mine and remove the same by any subterranean process incident to the business of mining." Thus there is a clear recognition that he retains as full property in, and dominion over all the coal, and could transfer the same to his heirs and assigns as if he had not agreed to convey other parts of the land. It is not a mere license to mine, nor a reservation out of something previously granted, but it is an exception out of the grant, so that no title to the coal should pass from him. He excepts "all the coal." There is no limitation as to the time nor the purpose for which it shall be taken. Under no circumstances was it to become the property of Emily Preston. The absolute right of property in the coal remained in Fellows, but he was not at liberty to sink shafts through the surface of the land for the purpose of mining it. He must reach and remove it by subterranean process. If in so doing the surface should be injured, the question arose how and to what extent should he be relieved from liability therefor? On the payment of the purchase-money, the agreement provides that Fellows shall execute and deliver a deed reserving the coal and privileges stated; but at the same time Emily Preston, for herself, her heirs and assigns, shall

[*Scranton v. Phillips.*]

give "a full and unconditional release and discharge for ever" to said Fellows, his heirs and assigns, "from any liability, for any injury that may result to the surface of the said premises from the mining and removal of the said coal, and with a quit claim on her part, her heirs and assigns, of all right, title and interest in and to said coal, and the privilege of mining and removing the same as aforesaid. "As aforesaid" not only refers to the subterranean process; but still more clearly to the absolute "release and discharge" from all liability for injury to the surface just before mentioned.

Thus, in clear, express and distinct language, it was agreed, the owner of the mine, his heirs and assigns, should be exempt from the very liability now attempted to be fastened on him and his assigns. We see no reason why a person shall not be bound by his agreement to exempt another from liability for damages in working a coal mine, as well as from liability for damages resulting in the performance of any other kind of labor. No rule or policy of law forbids it. The undoubted intention of the parties to the contract was, that Fellows might mine and remove the coal without any obligation to support the surface or liability in case it fell. It was well said by Justice Blackburn, in Smith *v.* Darby et al., Law Rep., 7 Q. B. 716, "the man who grants the minerals and reserves the surface is entitled to make any bargain he likes; both parties are just as much at liberty to make a bargain with reference to coals and minerals, as to make a bargain with reference to anything else." The same rule applies when one grants the surface and retains the minerals. In each case the question is, did the parties agree there should be no obligation in regard to support?

On the 30th July 1860, while this contract was in force, Fellows executed the lease to the Scrantons. Although called a lease, it was virtually a sale of all the coal, with unlimited time to remove it, with the right at their election to yield it up after the expiration of ten years. It was therein stipulated that the Scrantons should "not be responsible for the falling in of said mines or the surface of said lands, in any case whatsoever," but in mining they were required to leave such pillars and supports as should be deemed sufficient by those having experience in mining, to prevent the surface from falling. While the language in this lease differs somewhat from that contained in the agreement with Emily Preston, yet it is evident the intention was to pass to the Scrantons substantially all the right and power which Fellows had to mine and remove the coal without liability for damages. He did not attempt to give them greater immunities than he possessed, but rather less. When the defendants in error afterwards procured from Emily Preston an assignment of the contract, it gave them full notice of the rights of Fellows, and of his exemption from

[Scranton v. Phillips.]

liability. They acquired her equities only. It is probable that the lease to the Scrantons was then recorded, thus giving to the defendants notice that Fellows had transferred his rights. If not then recorded, it was soon thereafter, and several years before the defendants in error obtained the deed from Fellows. The fact that it omitted the clause releasing Fellows, his heirs and assigns, from all liability for damages from injury arising in mining, could not take from the Scrantons rights which he had previously transferred to them. The defendants in error purchased the interest of Emily Preston in the contract, subject to all the obligations therein imposed on her affecting the title. She could not compel a delivery of the deed without fulfilling her obligation to release and discharge Fellows as therein stated. It was to be done cotemporaneously with his deed, and to be contained in the deed which she covenanted for herself, her heirs and assigns, to make to him. Her covenant was in regard to the enjoyment of a thing *in esse*. It ran with the land, and the defendants in error, as purchasers from her, took the land subject thereto: Cathcart v. Bowman, 5 Barr 317. It therefore follows that the Scrantons are not liable for the reasonable exercise of any right which they acquired from Fellows, under the terms and conditions of the lease, at a time he possessed that right; and he cannot in this action be liable to the defendants in error in case he afterwards conveyed to them rights which he had previously granted. In so far as the rulings of the court are contrary to this opinion, the assignments are sustained. We discover no substantial error in the remaining assignments.

Judgment reversed, and a *venire facias de novo* awarded.