Luther, Appellant, *v.* Pennsylvania Game Commission.

Submitted March 22, 1955. Before Stern, C. J., Stearne, Jones, Bell, Chidsey, Musmanno and Arnold, JJ.

*Paul D. Larimer,* with him *Englehart, Larimer & Englehart,* for appellant.

*George M. Spence,* with him *John Sullivan,* Deputy Attorney General, *Herbert B. Cohen,* Attorney General, and *Spence, Custer, Saylor & Wolfe,* for appellees.

Opinion by Mr. Justice Musmanno, April 21, 1955:

Mary Luther, the plaintiff in this case, brought an action to quiet title for certain seams of coal underlying certain lands in Dean Township, Cambria County. Upon a case stated, the Court below gave judgment in favor of the defendants and this appeal followed.

On October 5, 1931, Frank P. McFarland and Oliver Rothert, owners in fee simple of a parcel of land, sold to H. L. Binnix the B seam of coal under-

lying that land, and at about the same time sold the C prime seam to the Bellefield Coal and Coke Company. Binnix erroneously advised the county assessor that he had purchased all of the land beneath the surface, except the C prime seam. Because of Binnix's letter, the assessment records were changed to show that McFarland and Rothert owned the surface alone; that the Bellefield Coal and Coke Company owned the C prime seam; and that Binnix owned all the coal except the C prime seam. Binnix became delinquent in his taxes and in 1938 the coal erroneously assessed against him (to wit, all that excepting the C prime) was sold by the county treasurer to the County Commissioners for delinquent taxes. On April 4, 1952, the County Commissioners, after Court approval, sold to Mary Luther all of the coal theretofore assessed against Binnix.

In 1943 the heirs of McFarland and Rothert sold their remaining interest in the property (the surface and all minerals except B and C prime seams already conveyed as above stated) to the Pennsylvania Game Commission and the Game Commission leased the E seam to the defendant Robert A. Williams for stripping operations.

Mary Luther, being of the impression that she had acquired good title to all seams of coal (except the C seam) brought an action to quiet title against the Game Commission and Robert A. Williams under Rule 1061, et seq., Rules of Civil Procedure. In their Answer, the Pennsylvania Game Commission and Williams contested the plaintiff's title to all coal with the exception of the B seam, that being the only layer of coal actually owned by Binnix, predecessor in title.

Mary Luther conceded that Binnix's ownership was limited to the B seam, but contended that the Game Commission, as the assignee of McFarland and Rothert, was estopped from denying the validity of the assess-

ments and the subsequent tax sales. The plaintiff urged in support of this argument that since McFarland and Rothert's conveyance to Binnix not only severed the title to Seam B from the surface, but severed as well the various seams from each other, McFarland and Rothert were thus charged with the obligation of notifying the County Commissioners of the exact state of affairs and since they failed in their duty to do so, they and their assignees are without right to complain. In support of this contention, the plaintiff cites *Hutchison v. Kline,* 199 Pa. 564, but the tax involved in that case had to do with unseated land. In *Gordon v. Harley et al.,* 165 Pa. Superior Ct. 433, 436, it was very clearly pointed out that: "While under the statutes it is the duty of the owners of *unseated* lands, there being no personal liability for taxes, to furnish a statement of ownership, etc., to the county commissioners, no such duty exists on the part of the owner of *seated* lands since personal liability exists . . ." It was also there stated (p. 437): ". . . §407 of the Act of 1933, 72 PS §5020-407 . . . provides that seated land is to be assessed in the name of the *owners.* . . . The owner of real estate cannot have it taken away from him by the making of an assessment in the name of somebody whose title is entirely spurious, which assessment gives no notice that the true owner's property is being assessed . . . The plaintiff herself proved that Whitmore at *no* time had ever owned the oil and gas, and never had any right, title or interest of any kind therein, and therefore a tax sale on an assessment made in Whitmore's name for that which he *never* owned can convey no title."

Although the defendants admit that Binnix never had right, title or interest in any seam of coal other than the B seam, they urge that this is not a case where the assessment is made in the name of one an entire

stranger to the property since of course, the assessment of the B seam against Binnix was entirely in accordance with the reality of the situation. But it must be noted that while seams of coal under a certain piece of land are in geographic juxtaposition, they are still different items of property and can have different owners. Although Seam X may be only one floor above Seam XX, it can be as far removed in ownership as title to a building in a city ten miles away.

Moreover, it must be emphasized that the tax sale of any seam of coal other than the B seam was invalid since no notice was given to the true owner of the other seams. In *Ross Appeal,* 366 Pa. 101, 104, we said: "It is to be noted that notice must be given to the *owner.* Now of course it may be conceded that the word *owner* standing alone may mean either the owner at the time of the sale or owner at the time the taxes were assessed. However, the doubt is cleared up by Sec. 102 of the Act which defines 'owner' to mean, 'The person in whose name the property is last registered, if registered according to law, and in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property."

Binnix never possessed or was registered as possessing other than the B seam. Since, therefore the County Treasurer's notice as to the tax sale consisted only of a registered letter to Binnix, it follows as a matter of course that the sale of seams other than the B seam was ineffective for failure of proper notice to the owners thereof. This proposition was made clear in *Hess v. Westerwick,* 366 Pa. 90, 96, where we said: "Without due process of law the right of private property cannot be said to exist. As said by Mr. Justice Pitney in Ochoa v. Hernandezy Morales, 230 U. S. 139,

161 (1912), 'The principle, known to the common law before Magna Charta, was embodied in that charter (Coke, 2 Inst. 45, 50) and has been recognized since the Revolution as among the safest foundations of our constitutions. Whatever else may be uncertain about the definition of the term "due process of law" all authorities agree that it inhibits the taking of one man's property and giving it to another, contrary to settled usages and modes of procedure, *and without notice* or an opportunity for a hearing.' "

"It may be well to say a word also as to the responsibility of the taxing authorities' duty in the premises. The purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes."

We find no error in the lower court's holding that the Treasurer's sale to the County Commissioners in 1938 for all land other than the B seam of coal, was, because of what is herein stated, fatally defective.

Judgment affirmed.