506 A.2d 985

John F. Culp, III, Petitioner *v.* Consol Pennsylvania Coal Company, Respondent.

John F. Culp, III, Petitioner *v.* Consol Pennsylvania Coal Company, Respondent.

Argued March 14, 1985, before Judges DOYLE and PALLADINO, and Senior Judge KALISH, sitting as a panel of three. Reargued October 9, 1985, before President Judge CRUMLISH, JR. and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*Gary P. Hunt,* with him, *Anthony P. Picadio, Tucker Arensberg, P.C.,* for petitioner.

*E. J. Strassburger, Strassburger, McKenna, Messer, Shilobod & Gutnick,* for respondent.

*Marc A. Roda,* Assistant Counsel, for intervenor, Department of Environmental Resources.

OPINION BY JUDGE DOYLE, March 20, 1986:

On May 28, 1985 this Court issued a decision wherein we upheld the determination of the Environ-

mental Hearing Board (EHB) that John F. Culp (Culp) had standing to appeal the issuance by EHB of a subsidence permit issued to Consol Pennsylvania Coal Company (Consol). We reversed the EHB, however, in its determination that Culp's interest in his superincumbent coal seams was *not* protected by The Bituminous Mine Subsidence and Land Conservation Act, Act of April 27, 1966, Special Sess., P.L. 31, *as amended,* 52 P.S. §§1406.1-1406.21 (Act). We held that Culp was protected against Consol's mining activities so as to entitle him to a hearing on whether Consol complied with Section 5(e) of the Act, 52 P.S. §1406.5(e). Section 5(e) states in pertinent part:

> An operator of a coal mine subject to the provisions of this act shall adopt measures and shall describe to the department in his permit application measures that he will adopt to prevent subsidence causing material damage to the extent technologically and economically feasible, to maximize mine stability, and to maintain the value and reasonable forseeable [sic] use of such surface land. . . .

By our May 28, 1985 Order we remanded the case to the EHB for such a hearing on Consol's compliance. Subsequent to this determination that Culp had a right to challenge the permit's issuance, this Court received a timely petition for reconsideration which it granted. After reargument before the Court en Banc on October 9, 1985 and upon reconsidering the matter, we now vacate our order entered May 28, 1985.

The initial proceedings before the EHB were procedurally complicated, but an understanding of them is necessary. Initially, Culp filed a notice of appeal with the EHB alleging ownership of coal seams underlying Consol's permitted area and further alleging that the Department of Environmental Resources (Department)

had abused its discretion in issuing Consol a permit without considering Culp's interest in preserving the economic value of *his* coal seams and in failing to require Consol to adopt alternative mining methods pursuant to Section 5(e) of the Act. Consol filed a motion to quash the appeal maintaining that because Culp had not alleged either a surface ownership "and/or" construction of a structure on the surface he lacked standing to challenge the permit's issuance under the Act. The EHB denied the motion to quash and permitted Culp to file an amended notice of appeal wherein Culp alleged ownership of (1) coal seams which were superincumbent to Consol's coal seams and (2) 400 acres of land which "overlies the area encompassed within the permit." Subsequent to this, Consol filed a motion for partial dismissal of the appeal. In this motion Consol argued, in essence, that the amended notice did not state a cause of action because the Act does not protect subsurface coal rights. The motion also argued that because Culp had not alleged ownership of a surface structure he had no remedy at law. But, significantly, the motion did not seek dismissal on this basis. Rather, Consol stated in the motion that the motion's purpose was to simplify the proceedings "by eliminating any extraneous considerations relating to Culp's subsurface coal rights." Additionally, Consol further indicated that it did not intend to concede that any ownership which Culp may in fact have had in unstructured surface land would endow him with a cause of action.

The EHB on March 1, 1984 issued an opinion and order wherein it held that Culp had standing but that the Act was not intended to protect his coal seams. The rationale for the EHB decision was that the Act speaks in terms of *structures upon* the land, not *features within* the land. The EHB went on to state that unless Culp could allege a threatened damage to surface structures

on the four hundred acres he owns within the permitted area, full dismissal of the appeal would be warranted.

Culp then petitioned the EHB for reconsideration. His petition was interlocutory because the March 1, 1984 order was not a complete dismissal of his appeal. The petition was also untimely under the EHB's rules. On April 3, 1984 the EHB issued an opinion and order wherein, in its discretion, it permitted the interlocutory appeal finding exceptional circumstances existed, *i.e.*, that the March 1 order "just about dismissed the appeal." The EHB stated in the April 3 opinion and order that only by alleging ownership of a structured surface could Culp keep the appeal alive. But Culp in his motion for reconsideration had indicated a willingness to stipulate that the surface was *unstructured* believing that such stipulation would facilitate a complete and final disposition of the matter by the EHB. Thus, it is apparent that in his motion for reconsideration Culp was pursuing a cause of action based only upon ownership of his superincumbent coal seam.[1] The EHB did two things. First, it held the petition for reconsideration to be untimely and unwarranted. Second, it held that because Culp had been willing to stipulate that he had no surface structure he had closed "the small remaining opening for keeping the appeal alive." Thus, based upon this petition the EHB modified its earlier partial dismissal and dismissed in full Culp's appeal. Appeal to this Court of both the partial dismissal and the full dismissal orders followed and on May 14, 1984, the Department filed a Notice of Intervention.

---

[1] Because the issue of Culp's surface ownership has not been preserved we need not address the statements in Consol's brief asserting that Culp's predecessor in title had conveyed to Consol's predecessor in title the common law right to support of the surface and strata overlying the seam in question except to state that these allegations have no factual support in the record and hence form no basis for our decision.

In an effort to clarify matters we begin first by stating that the issue before us now is *not* one of standing, the petition for reconsideration filed by Consol not having maintained that that portion of our opinion was in error. Nor is the issue one of whether a surface owner is granted protection under the Act if that owner has no structures on the surface. It is clear from the proceedings below that that was not a theory Culp wished to pursue. Thus we will not entertain it at this late stage of the proceedings.

The sole issue then is whether the Department abused its discretion in granting Consol the subsidence permit without considering Culp's interest in his superincumbent coal seams. Put another way, did Culp allege an interest covered by the Act which interest would mandate at least *consideration* by the Department before it issued a subsidence permit to Consol. If, in fact, Culp *has* alleged such an interest then the Department committed an error of law in failing to consider that interest and hence abused its discretion in granting the permit to Consol without doing so.

We begin our analysis by examining the purpose of the Act. The legislature in Section 2 of the Act, 52 P.S. §1406.2, has declared:

> This act shall be deemed to be an exercise of the police powers of the Commonwealth for the protection of the health, safety and general welfare of the people of the Commonwealth, by providing for the conservation of surface land areas which may be affected in the mining of bituminous coal by methods other than 'open pit' or 'strip' mining, to aid in the protection of the safety of the public, to enhance the value of such lands for taxation, to aid in the preservation of surface water drainage and public water supplies

and generally to improve the use and enjoyment of such lands and to maintain primary jurisdiction over surface coal mining in Pennsylvania.

It can be seen from this Section that the Act was established to (1) conserve land area (2) protect the public (3) enhance the value of surface lands (4) aid in preserving surface water drainage and public water supplies (5) improve the use and enjoyment of surface lands and (6) maintain primary jurisdiction. With these purposes in mind the legislature in Section 3 of the Act, 52 P.S. §1406.3, made the following pertinent policy declarations:

(1.) The protection of surface structures and better land utilization are of utmost importance to Pennsylvania.

(2.) Damage to surface structures and the land supporting them caused by mine subsidence is against the public interest and may adversely affect the health, safety and welfare of our citizens.

. . .

(4.) The preservation within the Commonwealth of surface structures and the land supporting them is necessary for the safety and welfare of the people.

(5.) It is the intent of this act to harmonize the protection of surface structures and the land supporting them and the continued growth and development of the bituminous coal industry in the Commonwealth.

It is clear from these Sections that the primary focus of the Act is upon protecting surface structures and the land supporting them for the benefit of the public. Additional support for this premise can be found in Section 4 of the Act, 52 P.S. §1406.4, which protects enumerated surface structures and Section 5(e), here under scrutiny and quoted above, which refers to "such surface land."

Pennsylvania has long recognized subsurface interests in land as being severable from surface ownership. *See, e.g., Scranton v. Phillips,* 94 Pa. 15, 20 (1880) citing *Caldwell v. Fulton,* 7 Casey 475. (Minerals beneath the surface may be conveyed separately.) *See also Luther v. Pennsylvania Game Commission,* 381 Pa. 442, 446, 113 A.2d 314, 315 (1955). (Seams of coal under a particular portion of land are different items of property and can have different owners even though they are in geographic juxtaposition.) Despite these long standing legal tenets of which the legislature may certainly be presumed to be aware, it has chosen not to specifically grant subsurface owners protection under this Act. Had the legislature wanted to provide protection for this category of owners it could have so stated. Instead, it repeatedly emphasizes that the Act protects *surface* lands. Thus, Section 5(e) does not protect Culp's subsurface interest and accordingly the Department need not consider this interest before issuing a permit under Section 5(e) of this Act.

Because we hold today that the Act does not protect subsurface interests, a question may arise as to the protection of the public if the issuance of a permit threatens only subsurface rights and hence such owner is not a party whose interest is entitled to consideration before a permit is issued. We believe that it is within the intendment of the legislature that the Department implement and police the provisions of the Act for the public welfare. Under Section 7(b) of the Act, 52 P.S. §1406.7(b), the Department is given the authority to:

adopt such rules, regulations, standards and procedures as shall be necessary *to protect the air, water and land resources of the Commonwealth and the public health and safety* from subsidence, prevent public nuisances, and to enable it to carry out the purposes and provisions

of this act, including additional requirements for providing maps, plans and public hearings. (Emphasis added.)

To this end the Department has enacted regulation 89.143, 25 Pa. Code §89.143. This regulation, which is entitled "Performance Standards", establishes standards for underground mining activities. These standards include the requirement that mine operators utilize support techniques which prevent subsidence damage to impoundments and other bodies of water, 25 Pa. Code 89.143(b)(1)(iii), as well as to aquifers and perennial streams, 25 Pa. Code 89.143(b)(1)(iv). This regulation further provides for the protection of utilities including "oil, gas and water wells; oil, gas and coal slurry pipelines; rail lines; electric and telephone lines; and water and sewage lines which pass under, over, or through the permit area. . . ." 25 Pa. Code §89.143(c)(1).

It is obvious that this regulation has been established to protect water and land resources (both above and below ground)[2] as well as the public health and safety. Moreover, it is clearly the Department which is vested with authority to enforce the Act and its attendant regulations for the public good. Under Section 9 of the Act, 52 P.S. §1406.9, the Department is given broad authority to issue orders necessary "to aid in the enforcement of the provisions of this act." The Department under this Section can, *inter alia,* suspend or revoke a permit, or direct immediate cessation of mining activities where, *inter alia,* the public welfare mandates such action.

---

[2] We note that Section 7(b) does not specifically restrict the Department's regulatory power to *surface* land and water when that power is exercised on behalf of the public.

Our position that the Department is charged with the duty of regulating and enforcing the Act on behalf of the public interest is also buttressed by an amendment to Section 13(a) of the Act, 52 P.S. §1406.13(a). Under this Section as initially enacted the legislature delegated to the Attorney General the authority to seek an injunction "to prevent violations of this act and otherwise provide for its enforcement. . . ." But this Section was amended by Section 1 of the Act of October 10, 1980, P.L. 874, and the word "department" was substituted for the term "Attorney General". Thus, it is clear that the legislature has directed that the Department is to act, rather than the attorney general, in enforcing the Act.

Our determination here today, while it does not provide protection for subsurface interests such as Culp's, can in no way be seen as detrimental to the protection of the public interest. And while it may be unfortunate that non-surface owners who own interests superincumbent to areas for which permits have been issued pursuant to Section 5(e) have no statutory right to consideration of their personal interests before permits are issued, we believe that the legislature, had it intended that such interests be considered, would have said so. Furthermore, we recognize that one reason for not providing protection for such interests may be because multitudes of relatively small and economically negligible ownership interests, if given the right to consideration under Section 5(e) which provides for due process hearings, could effectively tie up in endless litigation mining operations of substantial size and hence operate to the detriment of the very public the Act seeks to protect.

Having determined that our opinion and order of May 28, 1985 was in error we accordingly vacate it and reinstate the orders of the EHB.

## ORDER

Now, March 20, 1986, the order in the above captioned matters dated May 28, 1985 is hereby vacated and the orders of the EHB are affirmed.

Judge COLINS dissents.

---

CONCURRING AND DISSENTING OPINION BY JUDGE PALLADINO:

I agree with the majority's holding that Culp's superincumbent coal seams are not protected by the Bituminous Mine Subsidence and Land Conservation Act, Act of April 27, 1966, Special Sess., P.L. 31 §§1-21, *as amended,* 52 P.S. §§1406.1-1406.21 (Act). However, I disagree with the majority's conclusion that Culp waived his theory that the Act protects unstructured surface rights.

The majority finds that this waiver was effected by statements made in Culp's motion for reconsideration of the Environmental Hearing Board's (Board) March 1, 1984, order which only dismissed that part of Culp's appeal addressed to the superincumbent coal seam. At the time this motion was filed, the protection of Culp's surface rights was not at issue but was merely the subject of dicta in the Board's opinion. Culp's willingness to stipulate that the surface was unstructured at this point in time does not constitute a waiver of his claim that the surface is protected even though unstructured. We must, therefore, address this claim on the merits.

Because I conclude that unstructured surface rights are protected by the Act, I would reverse that part of the Board's order which dismissed Culp's appeal with respect to the protection of his surface rights, and remand to the Board for a hearing on the merits of this aspect of the case.