517 A.2d 578

Joseph George, Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Argued March 10, 1986, before President Judge CRUMLISH, JR., and Judges ROGERS and BARRY, sitting as a panel of three.

*Patrick McGinley,* with him, *William M. Baily, Thompson and Baily,* for petitioner.

*Daniel E. Rogers,* Assistant Counsel, with him, *Marc A. Roda,* Assistant Counsel, for respondent.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., November 13, 1986:

Joseph George appeals an Evironmental Hearing Board (Board) order dismissing his appeal and upholding the issuance of a Department of Environmental Resources (Department) subsidence control permit to Consolidation Coal Company (Consol) under the Bituminous Mine Subsidence and Land Conservation Act (Act).[1] We affirm in part, vacate in part and remand.

Pursuant to Section 5[2] of the Act, the Department issued the permit on June 7, 1984, authorizing Consol to conduct underground "longwall" mining[3] of the Pittsburgh coal seam, a portion of which underlies George's property. George's interest in his property includes ownership of a coal seam overlying the Pittsburgh seam and a surface stream and waterfall. The Board dismissed George's appeal without a hearing because it determined that his interest in the surface and subsurface features of the property were unprotected by the Act.

Our scope of review of a Board decision is limited to a determination of whether an error of law has been committed, constitutional rights have been violated or any findings of fact are unsupported by substantial evidence. *Einsig v. Pennsylvania Mines Corp.,* 69 Pa. Commonwealth Ct. 351, 452 A.2d 558 (1982).

George initially contends that the Board erred in its determination that the Department had no duty under

---

[1] Act of April 27, 1966, Special Sess., P.L. 31, *as amended,* 52 P.S. §§1406.1—1406.21.

[2] 52 P.S. §1406.5.

[3] Our research indicates that the longwall method of mining proposed by Consol results in a more immediate and often more complete subsidence than the room-and-pillar method.

the Act to consider the possible effects of subsidence upon his underlying coal seam. We disagree.

In the recent case of *Culp v. Consol Pennsylvania Coal Co.*, 96 Pa. Commonwealth Ct. 94, 506 A.2d 985 (1986), we held that the legislature's use of the term *surface* lands within the Act constituted a conscious choice specifically not to grant subsurface owners protection under the Act. Inasmuch as the relevant federal regulations reveal no contrary intent,[4] we find *Culp* to be controlling. Thus, we hold that the Board committed no error of law in declining to consider the effects of subsidence upon George's coal seam.[5]

George further maintains that the Act requires the Department to consider the effects of subsidence on his surface stream and waterfall.[6] He specifically contends

---

[4] Comments received by the federal Office of Surface Mining Reclamation and Enforcement (OSM) pursuant to the promulgation of the current federal regulations governing mine subsidence, 30 C.F.R. §§784.70 and §§817.121—817.126, indicated a concern that the proposed regulations failed to consider underground impacts. 48 Fed. Reg. 24,640 (1983). The OSM persisted in its belief that a subsidence control plan is properly directed only to the evaluation of surface impacts of underground mines. Moreover, Section 701(28) of the Surface Mining Control and Reclamation Act, 30 U.S.C. §§1201-1328 (1982), defines underground mining activities regulated thereunder to include only the surface impacts incident to an underground coal mine.

[5] George contends collaterally that he has a common law right to subjacent support of all strata lying above the Pittsburgh coal seam, including his coal seam. *Lenox Coal Co. v. Duncan-Spangler Coal Co.*, 265 Pa. 572, 109 A. 282 (1920). However, we believe that the enactment of the Subsidence Act was intended to modify the common law right of support for subsurface features as well as surface features. Our decision in *Culp* supports this position.

[6] George also argues that the longwall mining method was not contemplated by the legislature at the time the Act was enacted. However, we take judicial notice that longwall mining is an accepted mining method and note that the comments taken pursuant to the federal regulation's promulgation (upon which Pennsylvania's regulations are based) indicate that both the longwall and room-

that the regulations[7] promulgated pursuant to the Act compel the Department to require that underground mining activities be planned and conducted so as to prevent damage to or the draining of perennial streams.[8] The Department counters that under the federal regulations in effect when the permit was issued, it was not required to consider subsidence effects on a perennial stream unless that stream was alleged to be a significant source of a public water supply.[9]

We agree that at the time Consol's permit was issued, the OSM had promulgated a revised federal primacy subsidence control program which caused the Commonwealth to suspend its existing regulations.[10] Under the revised federal regulations, the prohibition of subsidence damage to surface features did not specifi-

---

and-pillar mining methods were contemplated. 48 Fed. Reg. 24,640 (1983).

[7] 25 Pa. Code §§89.143—89.147.

[8] A perennial stream is described at 25 Pa. Code §89.141(b)(2) as "a stream or part of a stream that flows continuously throughout the calendar year as a result of ground-water discharge or surface runoff. The term does not include intermittent or ephemeral streams."

[9] According to 25 Pa. Code §89.143(2), to be a "significant source of water for a public water supply system," the aquifer or other body of water, including a perennial stream, must supply water to a public water system as defined in the Pennsylvania Safe Drinking Water Act, Act of May 1, 1984, P.L. 206, 35 P.S. §§721.1—721.17 (at least fifteen service connections or regularly serving a minimum of twenty-five individuals).

[10] The revised federal primacy subsidence control program came into effect on July 1, 1983. 30 C.F.R. §§784.20, 817.121, 817.122, 817.124 and 817.126 (1983) (Administrative history at 48 Fed. Reg. 24,638). As a result, the Commonwealth suspended the existing regulations (13 Pa. B. 2057 (1983)). Effective December 28, 1985, substantially similar subsidence control provisions conforming to the federal scheme were approved by the Department of the Interior (15 Pa. B. 4581 (1985)), allowing the Commonwealth to regain primacy over its underground mining activities.

cally include perennial streams but did permit regulatory authorities to limit the amount of coal extraction beneath or adjacent to aquifers and other bodies of water which were a significant source of a public water supply. 30 C.F.R. §817.121(d).[11] Therefore, we hold that the Department erred in failing to consider whether George's stream was a significant source of public water supply.[12] We believe George's failure to allege his stream as a significant source of a public water supply to be a *de minimis* error.

Accordingly, we affirm the Board's order in part, but vacate the order insofar as it determines that the Department was not required to consider evidence that George's stream was a significant source of a public water supply, and remand this case for such consideration.

ORDER

The Environmental Hearing Board order, No. 84-223-G dated December 3, 1984, is affirmed in part, vacated in part and remanded for a determination of whether George's stream and waterfall are a significant source of a public water supply.

Jurisdiction relinquished.

---

[11] 30 C.F.R. §817.121(d) (1983) provides, in pertinent part: If the regulatory authority determines that it is necessary in order to minimize the potential for damage to the features or facilities described above or to any aquifer or body of water that serves as a significant source of any public water supply system, it may limit the percentage of coal extracted under or adjacent thereto.

[12] Moreover, under the revised Commonwealth regulations, 25 Pa. Code §89.143(d), perennial streams are clearly protected. Under this performance standard, the operator is required to maintain the premining uses of the stream, including aquatic life support, water supply and recreational uses. 15 Pa. B. 1171-1172 (1985). Although this greater protection for perennial streams was not in force at the time of the instant permit's issuance, we note that any current mine operation must be in conformity therewith.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| AS CAPTIONED IN | : | No. 524 C.D. 1982 |
| | : | No. 759 C.D. 1982 |
| | : | No. 345 C.D. 1984 |
| | : | No. 354 C.D. 1984 |
| THE DOCKET OF | : | No. 362 C.D. 1984 |
| | : | No. 781 C.D. 1984 |
| | : | No. 2291 C.D. 1984 |
| | : | No. 770 C.D. 1985 |
| THIS COURT | : | No. 696 C.D. 1986 |
| | : | No. 698 C.D. 1986 |
| | : | No. 712 C.D. 1986 |
| | : | No. 719 C.D. 1986 |
| | : | No. 1175 C.D. 1986 |
| | : | No. 1176 C.D. 1986 |
| | : | No. 1275 C.D. 1986 |

### PER CURIAM ORDER

NOW, October 17, 1986, our prior opinions in the above-captioned election matters are hereby directed to be reported and the dockets in each case shall be amended accordingly. The Chief Clerk is directed to transmit copies of said opinions to the entities on the official opinion distribution list.